AUGUST J. SCHULZ, Appellant, v. FRANK J. SMERCINA.—1 S. W. (2d) 113.

Division One, December 7, 1927.

*Foristel, Mudd, Blair & Habenicht* for appellant.

*Holland, Rutledge & Lashly* and *Franklin Miller* for respondent.

GRAVES, P. J.—Plaintiff sues for the alleged wrongful and negligent killing of his wife by the driver of a truck belonging to defendant. It was admitted that the driver of the truck was the employee of defendant and was, at the time, about the defendant's business. It was a delivery truck, and the driver of the truck and a boy were then delivering packages for defendant to defendant's customers, from defendant's store. So if the driver was negligent the defendant is liable. Upon a trial before a jury the defendant had a verdict in his favor, and from this judgment entered upon such verdict the plaintiff has appealed. Learned counsel for the defendant makes no objection to that part of appellant's statement of the case relative to the pleadings, so we adopt it as follows:

"The petition in the case purports to be an action for damages sustained by the plaintiff, as the husband of Anna Schulz, who was struck, knocked down, run over and killed by the defendant's truck at the intersection of Kingshighway and Cote Brilliante Avenue in the city of St. Louis on the 24th day of December, 1923, alleged to have resulted from the negligence and carelessness of the defendant, through his servant and agent, in the management of the defendant's truck. The allegations of negligence charged against the defendant, as resulting in the death of plaintiff's wife, were the following:

"1. Excessive, unreasonable and dangerous rate of speed under the circumstances, and so as to endanger the life and limb of persons upon the street at said place.

"2. Negligent failure to sound or give any signal or warning of the approach and movement of defendant's truck.

"3. Negligent failure to have the truck under such control that it could be readily and reasonably stopped upon the appearance of danger.

"4. Negligent failure to stop the automobile 'when, by the exercise of ordinary care,' it would and could have been done.

"5. Negligent failure to keep a lookout, either ahead or laterally.

"6. Negligently and carelessly swerving the truck so as to cause it to collide with the plaintiff's wife.

"7. That the defendant's agent in charge of the truck saw, or by the exercise of ordinary care would have seen, plaintiff's said wife in a situation of imminent peril of being collided with and struck and injured by said automobile, and oblivious thereof, in time thereafter, by the exercise of ordinary care, to have stopped said automobile, or slackened the speed thereof, or swerved the same, or given warning of its approach and movement, so as to have avoided collision and injury to plaintiff's wife, and negligently failed to take any of these precautions.

"8. Driving the automobile in excess of a speed of ten miles per hour in violation of an ordinance.

"9. Negligent failure to give warning, as provided by the ordinance.

"10. Negligent failure to run the truck as near as practicable to the right-hand side of the street, as provided by ordinance.

"The answer was a general denial, together with an affirmative defense of contributory negligence on the part of plaintiff's wife approximately contributing to her own death.

"There was a denial of all the allegations of new matter in the answer."

The defendant's theory of the case was that deceased suddenly came from behind another passing car immediately in front of the truck, and such is the impression left by some evidence in his behalf.

For the plaintiff the case was submitted to the jury upon the humanitarian doctrine only. This is number 7 of the grounds set out above. In so doing, all other alleged grounds of negligence were abandoned by plaintiff in the submission of the case.

We stated above that learned counsel for defendant made no objection to appellant's statement of the case so far as the pleadings are concerned. To that we will now add that he makes no objections to appellant's statement of the case, except as to the evidence, concerning which counsel for respondent says:

"We cannot adopt appellant's statement of facts in its entirety. On the whole, it fairly states the fact as found in appellant's printed abstract of the record; but we find that several important phases of the evidence are either overlooked or unduly minimized in counsel's statement. We will endeavor to clear up these points as briefly as possible."

This being the only objection to appellant's statement of the case, we are at liberty to further borrow from it. Appellant sets out in full his instruction on the humanitarian doctrine, and then proceeds:

"The defendant asked, and the court gave, instruction numbered 4, directing the jury to disregard the charge of excessive speed, and No. 5, directing a like disregard of negligent failure to swerve defendant's automobile, and No. 6, directing the jury to disregard the charge of operating a car in excess of ten miles per hour, prescribed by the ordinance, and further gave instructions numbered 8, 9, 10, 11 and 12, which, for convenience, we set out in full here:

" '8. The court instructs the jury that plaintiff alleges in his petition that the death of Anna Schultz was directly due to negligence on the part of the defendant's chauffeur, in that he failed to keep a lookout laterally, when he knew, or by the exercise of ordinary care would have known, that by so doing he would have discovered said Anna Schultz in time to have avoided the collision.

" 'In reference to said charge, the court instructs the jury that under the instructions of the court, said charge is now withdrawn, and the jury, in their deliberations, will ignore the same.

" '9. The court instructs the jury that it was the duty of Anna Schultz, while crossing the roadway mentioned in the evidence, to exercise ordinary care to look to ascertain whether any vehicle was approaching her and in dangerous proximity. The court instructs the jury that if you believe and find from the evidence that Anna Schultz, while crossing said roadway, failed to exercise such ordinary care and that had she done so she would have seen defendant's truck approaching her and in dangerous proximity in time, by the exercise of ordinary care, to have avoided being struck by said automobile and failed to do so, then and in that case Anna Schultz was guilty of negligence that directly contributed to her death.

" '10. The court instructs the jury that if, under the evidence in this case and the instructions of the court, you find that Anna Schultz was guilty of contributory negligence and you further find and believe from the evidence that the defendant's chauffeur, as he proceeded northwardly over the intersection of Cote Brilliante and Kingshighway, was exercising ordinary care to look ahead for pedestrians, and that defendant's chauffeur, after he saw Anna Schultz, exercised ordinary care to extricate her from the hazard to which she had negligently exposed herself, that is, exercised ordinary care to prevent defendant's truck from striking her, then and in that case the plaintiff is not entitled to recover, and you will find your verdict for the defendant.

" '11. The court instructs the jury that plaintiff is not entitled to recover in this case merely because Anna Schultz was struck by the automobile of defendant mentioned in the evidence and died as a result of being so struck. On the contrary, the court instructs the jury that if you believe and find from the evidence that defendant's chauffeur, while passing over the intersection of Cote Brilliante Ave-

nue and Kingshighway and while approaching the north crossing of Cote Brilliante Avenue, exercised ordinary care to keep a lookout for persons mentioned in the evidence and that as soon as defendant's chauffeur saw Anna Schultz he exercised ordinary care to avoid striking her, then and in that case plaintiff is not entitled to recover, and you will find your verdict for defendant.

" '12. The court instructs the jury that if you believe and find from the evidence that Anna Schulz, while crossing the roadway mentioned in the evidence, placed herself in a position of danger of being struck by defendant's truck when same was so close to her that defendant's chauffeur, by the exercise of ordinary care, could not, by the exercise of ordinary care, have seen her in time to prevent said truck from striking said Anna Schultz, then and in that case the plaintiff is not entitled to recover, and you will find your verdict for the defendant.'

"Plaintiff's counsel duly objected and excepted to the giving of each of these instructions."

We have quoted these instructions in full, because the respondent has certain contentions as to their meaning and effect, as well as the contentions of the appellant which are made as to them. It may be that appellant's assignment of errors has limited his contentions in a way (we hardly think so), but by setting them out in full the contentions of both sides may be made more apparent.

Appellant's assignment of errors is short and we quote it in full as follows:

"The court erred in giving defendant's instructions numbered 8, 9, 10, 11 and 12, and each of them.

"Instruction 8 erroneously takes from the jury the duty of the defendant to 'keep a lookout laterally,' because although that charge, as a charge of primary negligence, was abandoned, yet it was equally the duty of the defendant to keep such lookout under the humanitarian or last-chance doctrine.

"Instructions 9 and 10 erroneously submit the contributory negligence of plaintiff's wife as a defense.

"Instruction 10 erroneously restricts and confines the duty of the truck driver to 'ordinary care to look ahead for pedestrians,' merely upon the event that the jury should find the plaintiff's wife guilty of contributory negligence; yet regardless of any contributory negligence of the plaintiff's wife, it was the duty of the truck driver to look both ahead and laterally.

"Instruction 11 directs a verdict for the defendant if the truck driver exercised ordinary care to avoid striking plaintiff's wife after he saw her, instead of after he, by the exercise of ordinary care, would have seen her."

It will be noted that this assignment says nothing about Instructions 4 to 7 inclusive, which were given for defendant, which in-

structions withdrew from the jury certain charges of negligence, fully stated, supra. For this reason we suggested, supra, that the assignment of errors might be said to limit appellant's contentions.

The points urged by appellant are only three in number, and these are well within the assignment of errors. They are as follows:

"1. Since the plaintiff abandoned all other charges of negligence, and went to the jury solely on the humanitarian or last-chance rule, it was error for the court to give defendant's Instructions 9 and 10, which submitted the defense of contributory negligence.

"2. It was not only the duty of the defendant's truck driver, while approaching and crossing the intersection, to look straight ahead, but he was equally bound to look 'laterally' or to the side, and it was, therefore, error of the court to give plaintiff's Instructions 8, 10 and 11.

"3. The liability on the part of the defendant is not confined to failure to act to prevent collision with the woman after he saw her, but the defendant is liable for such failure to act after he, in the exercise of ordinary care, would have seen the plaintiff, and hence there is error in this regard in plaintiff's Instructions 10, 11 and 12."

We have read respondent's brief from cover to cover (and carefully read it), but we fail to find any vigorous contention that there was no evidence in the record upon which the case should have been submitted to the jury under the humanitarian doctrine. Learned counsel spends the force of a well written brief in trying to justify the giving of these instructions numbered 8 to 12, both inclusive. Nor is there complaint that Instruction 1 for plaintiff (the instruction submitting the case under the humanitarian doctrine) was not in proper form. Nor is it contended that there is no evidence to support the instruction. It is contended that there is no conflict between plaintiff's Instruction 1, and Instructions 8 to 12 inclusive. The foregoing is a general outline of the case for determination. It may not be necessary to note all the contentions in the course of the opinion. The place of accident and surroundings are shown by a plat in evidence. This plat we have had photographed in order to get a reduction in size, and yet retain the proper proportions. A local photographer did the work, and he may not have obtained the results which a strictly commercial photographer might have obtained, but it is at least accurate, and will fully subserve our purpose in using the plat. We close this general outline of the case with this photographic copy of the plat for use in the course of the opinion.

I. We have stated that learned counsel for respondent offered but one objection to the statement made of the case by appellant. At the expense of brevity, but to have all pertinent matters together, we re-quote same. It is said in the statement for respondent:

"We cannot adopt appellant's statement of facts in its entirety. *On the whole, it fairly states the fact as found in appellant's printed abstract of the record;* but we find that several important phases of the evidence are either overlooked or unduly minimized in counsel's statement. We will endeavor to clear up these points as briefly as possible."

The evidence is somewhat confusing on parts of it. Use of a plat frequently tends to confuse evidence. Witnesses do not always grasp a plat. After giving his views of the evidence counsel then states that at the close of all the testimony the "plaintiff then elected to abandon all other assignments of negligence pleaded, and to go to the jury on the seventh assignment only, based on the so-called 'last chance' or humanitarian doctrine, which was submitted to the jury in Instruction 1 given for plaintiff." The statement then says plaintiff asked and received two other instructions, one of which defined ordinary care and the other was upon the measure of damages. Then

it is stated that defendant asked and had given Instructions 4, 5, 6 and 7, "withdrawing four of the assignments of negligence thus abandoned by plaintiff." The statement then speaks of defendant having been given Instruction 13, which is not seriously in the issues on this appeal. Respondent's statement then thus concludes:

"The court gave, at defendant's request (over plaintiff's exception) Instructions 8, 9, 10, 11 and 12 on the merits of the case, which action of the court in giving these five instructions the plaintiff (appellant here) assigns as error upon which to base this appeal. So that the case now stands on plaintiff's appeal from a judgment for defendant, assigning as reversible error the giving of the five instructions, Nos. 8, 9, 10, 11 and 12, which is accordingly the only claim of error to be noticed or considered by this court. The error thus claimed and assigned is treated by appellant under three distinct points or headings, which we will undertake to answer in the order of their statement in appellant's brief."

In the foregoing the italics are ours. Thus we have respondent's conception of the issues upon this appeal. In the argument it was stated by counsel for appellant that there was no serious contention by respondent's counsel that the plaintiff was not entitled to go to the jury upon the humanitarian doctrine. To this learned counsel for respondent did not demur. It was further stated in the argument that the evidence in behalf of defendant had much strengthened the humanitarian doctrine of negligence pleaded by the plaintiff, and from such argument it might be inferred that this situation induced the plaintiff's election to stand upon the humanitarian rule alone. In view of the statements and briefs upon both sides, we would be fully justified in saying that the respondent is not contending that there was no evidence upon which to submit the plaintiff's case to the jury. In other words the plaintiff (appellant) is contending in this case that the instructions of respondent were erroneous, and the respondent is contending that they are proper, and his verdict should not be disturbed. However, while we could well proceed on the theory that the right of plaintiff to go to the jury on the humanitarian rule is a conceded fact, we shall not do so, but shall point out the facts showing that the evidence, as a whole, made out a case for the jury under the humanitarian rule.

II. At end of our statement we have a photograph copy of a plat in evidence. To this reference must be made to get a clear understanding of the facts in evidence. This plat shows the intersection of Kingshighway, a north-and-south street in the city of St.  Louis, and Cote Brilliante Avenue, an east-and-west street in the city of St. Louis. It will be noted that the intersection is not a straight one, because Cote Brilliante Avenue

on the west side of Kingshighway is not directly opposite to Cote Brilliante Avenue on the east side. It is further south than Cote Brilliante on the east side. Deceased and the plaintiff (at time of accident) lived at 5215 Cote Brilliante, which was west of Kingshighway. Deceased left her home about 5:15 P. M. on December 24, 1924, to go up town, according to her husband's testimony, and he never saw her alive after that hour. She was a healthy, active woman of fifty-six years, and weighing 135 pounds. Kingshighway is a very broad street, with parkway in the center. This parkway alone is forty-five feet and six inches wide. Upon the sides of this parkway are travel or driveways, each of which is twenty-seven feet two inches wide. Northbound traffic uses the east driveway and southbound traffic uses the west driveway. These asphalt driveways have each a parking space of ten feet in width from the curb and then a sidewalk space of six feet. The parkway at the intersection has, where it is divided for the roadway of Cote Brilliante Avenue, two semi-circular parkings eight feet wide, and two sidewalks six feet wide, one each upon either side of the roadway. These all appear from the photographic copy of the plat.

Now going to Cote Brilliante Avenue, we have an asphalt driveway thirty feet and two inches between the curbs. Then from the curbing is a parking space of five feet, and next to it a sidewalk five feet wide. Such are the measurements to be considered in applying the evidence.

It was shown that Arthur Detweiler, the driver of the truck, was an experienced driver; that his truck was equipped with the best A. C. brakes; that he was going from twelve to fifteen miles per hour; that at a speed of twelve miles he could (by use of emergency appliances) have stopped his truck within ten feet, and at fifteen miles per hour within fifteen feet; that the intersection was well lighted. The latter fact also appears from the number and location of lights on the plat.

We pass now to another set of facts. The truck was going north on the east driveway of Kingshighway. We are especially interested in three motor vehicles on this driveway, south of the intersection, but traveling north toward it, at about the time of the accident. We shall, of course, give the most favorable evidence for the plaintiff. Such is the rule in determining whether or not the case should be submitted to the jury. Reverting now to these three motor vehicles, we have the truck of defendant (which was a Ford touring car, with a truck body on it), being driven at from twelve to fifteen miles per hour within four or five feet of the east curb of the driveway. Back of the truck some thirty-five feet, and near the center of the driveway, was a small Ford coupe driven by the witness Frank Scroggins, and at the same rate of speed as the truck. Some fifteen feet to the

rear of the truck was another large 6-cylinder coupe driven by a woman at a speed of twenty-five to thirty miles per hour, or "twice the speed" of the truck. This machine was near the left-hand side of the driveway. These distances are given by Scroggins, but he does not locate just where the cars were when they were thus distanced.

On cross-examination, Detweiler, the truck driver, says this large coupe started to pass him when he was one hundred feet from the intersection of Kingshighway and Cote Brilliante, and he says he was going from twelve to fifteen miles per hour, and the coupe was going twice as fast as he was. So it is clear that when he traveled to within ten feet of the south curb of Cote Brilliante, or ninety feet, the coupe would have gone one hundred eighty feet, and if so it was beyond even the north curb of Cote Brilliante when the truck was within ten feet of the south curb. This evidence is entitled to weight, because it shows that there was nothing to obstruct the view or prevent the driver from seeing deceased as she started across the street. He could have seen her had he been looking in that direction. Going back now to the evidence of Scroggins; he gave the location of the woman and the motor vehicles. He first saw the woman standing upon the sidewalk at the west curb of the roadway at the point marked with an X near the letter C. He locates the truck by the letter T some ten feet south of the south curb of Cote Brilliante Avenue. The big coupe was at the point marked C near where deceased was standing. Scroggins locates his coupe in the center of the driveway by the letter S, some distance back of the truck. When these three moving vehicles were thus located, the deceased was standing at the curb, and waiting to move northeast to the north sidewalk on Cote Brilliante, or at least in that vicinity. Now, before the truck reached the south curb of Cote Brilliante (ten feet or a little more from the point T) the big coupe moved twenty or more feet and had passed the standing woman. As it passed her, Scroggins says that she started hurriedly toward the northeast. As she thus started there wasn't a thing to keep this truck driver from seeing her every move. Scroggins saw her and blew his horn, but the woman looked back at Scroggins and hurried on in her course. That she was oblivious of the approaching truck is evident. Scroggins says she was struck when opposite the lamp fifteen feet north of the north curb of Cote Brilliante. Two other witnesses put it further north. From the south curb of Cote Brilliante to the point where the woman was struck and killed was (according to Scroggins) a distance of fifty-five feet. In traveling all this space Detweiler, the truck driver, had a clear view of the hurrying woman had he looked toward the west side of the driveway he was using. Yet not even a horn was sounded, according to Scroggins. The parties on this truck never looked for

foot-passengers. The driver said he first saw the woman two feet in front of his machine, and did not know from where she came. Scroggins says that the woman actually ran north right in front of the truck for two feet or more, when she found it bearing down upon her. Detweiler's statement as to where the big coupe started to pass him makes the matter more serious for him, because the big coupe would have passed the woman before the truck reached the letter T. But on any theory of the Scroggins evidence, with the physical facts in evidence, there was a case for the jury to consider under the humanitarian rule. No sound of horn or slackening of the speed until the woman was struck and killed. There was ample space within which to have saved her had he been on the lookout.

The facts show that he was not looking. Says he does not know how the woman got in front of his truck. To look was to see, and to see was to save this oblivious woman from an untimely death.

As said two other witnesses gave evidence tending to show that the woman was a little further north of the north curb of Cote Brilliante than was testified to by Scroggins. Frank C. O'Malley and Charles W. Casey had gone west of Kingshighway on Cote Brilliante, and turned around and came back to Kingshighway over this intersection. They were in O'Malley's car. As they entered the east driveway of Kingshighway and turned north they saw a man holding up a woman in the street and that there had been an accident. They drove up and stopped. O'Malley locates the rear end of the truck on this plat by the letter A, which can best be seen by holding the east side of the plat to you as you look. It is the last identification mark to the north in the east driveway of Kingshighway. He locates the position of the woman by the letter L, and this is south and west of A. Both are further north than the lamp post located by Scroggins. The testimony of Casey corroborates O'Malley. The truck driver was holding up the woman (in a sitting posture I take it), by putting his hand under her arms. The witness O'Malley was asked by the truck driver to take the woman to the hospital, which he did, but when they reached the Missouri Baptist Hospital the doctors pronounced the woman dead. The only importance of these witnesses is that their evidence shows more distance in which the truck driver could have acted had he looked and seen. We have given Detweiler's cross-examination, supra, wherein he said the big coupe started to pass him at a point one hundred feet south of the intersection. We should say that in chief he claims that the coupe was passing him as he reached the intersection, and obstructed his view to the west, and did not finish passing him until he got to the north curb of Cote Brilliante. The contradictory statements were for the jury to weigh and determine. He evidently overlooked his statements to the effect that the coupe was going twice as fast as

his truck. He says the woman was running northeast when he first saw her two feet in front of his car, but he did not know whether she saw his car or not. He said that he did not see from where she came, but that she must have come from the west.

A jury could have the right to believe Scroggins and Detweiler's cross-examination in preference to his evidence in chief. So we reiterate that the evidence and facts and circumstances in evidence made a case for the jury under the humanitarian rule.

III. We may not follow the exact order set by counsel in the disposition of the contentions as to the instructions given to defendant, and charged to be erroneous by the plaintiff. In the assignment of errors Instruction 8 is the first assignment of error. In points and authorities the order is varied some. We shall dispose of Instruction 8 first. The 5th paragraph of the petition charged that defendant's agent negligently "failed to keep a lookout, either ahead or *laterally.*" Instruction 8 tells the jury that the petition charges the defendant with such alleged negligent conduct of his agent, and closes in this language:

"In reference to said charge, the court instructs the jury that under the instructions of the court said charge is now withdrawn, and the jury, in their deliberations, will ignore the same."

Learned counsel for respondent in his argument here very frankly stated that it would be error to withdraw from the jury *any* fact which should be considered by the jury under the humanitarian rule, but among other excuses for Instruction 8, he says it only withdraws a *charge* of negligence, and not facts in evidence. In other words, it is conceded that it would be grave error to tell the jury that it should not consider the facts as to whether or not the truck driver looked *laterally* as well as ahead as he approached and crossed this intersection. To so look is conceded to be both a common law as well as an ordinance duty. In Hornbuckle v. McCarty, 295 Mo. l. c. 173, this court, through RAGLAND, C., said:

"This instruction was asked on the theory that the duty of a driver of an automobile requires him to look in the direction in which he is going only and not behind nor to one side to see if anything happens after the front part of his machine has passed. Generally speaking that is true, but the driver must look not only straight ahead *but laterally ahead.* [Aronson v. Ricker, supra; Holmes v. Railroad, 207 Mo. 149, 163.] Had Malugen done that he would no doubt have discovered that a collision between the truck and the boy was imminent, before the front of his machine passed the line of the latter's progress —that it was highly probable that the truck would run against the boy, or the boy unwittingly against the truck. At least there was

evidence tending to show such facts. 'The instruction ignored this essential phase of the case, and was therefore properly refused.''

But it is urged that the instruction merely withdrew the ''charge of negligence'' and not the facts from the consideration of the jury. Literally this may be true, but what would be the understanding of the unschooled lay mind? What would the jury understand by the words ''and the jury, in their *deliberations, will ignore the same?*'' What would the average jury do, ignore the mere written *charge* in the petition, or would it ignore the charge and all evidence bearing thereon? There was evidence in this case bearing upon this charge contained in paragraph five of the petition. The charge is a failure to look out ''either *ahead* or laterally,'' but the instruction (No. 8) uses only the term ''laterally,'' thus leaving an inference that a failure to look ''ahead'' might be vital, but to ''keep a lookout laterally'' was not required. But the real trouble with this instruction No. 8, is that it is liable to mislead a jury. Under it the average jury would conclude that everything relative to a failure to look to the sides of the street, or to ''look laterally'' was to be ignored in the consideration of the case. Counsel concede that if the instruction said to the jury to ignore the facts, that it would be error. To the lay mind it was certainly subject to that construction.

But why such an instruction in this case? The *fifth* charge of the petition had been abandoned by plaintiff, and was as *fully out* of the case, upon submission by plaintiff, as it was after the giving of this instruction for defendant. Or, if a withdrawal was thought necessary, it could have been done in a way which would not have been misleading and prejudicial. The instruction is highly misleading and should not have been given. This is the least which can be said of this instruction. The instruction is in no way helped by any of the other instructions, either for defendant or for plaintiff. Counsel for respondent urges that when all these instructions are considered together, they declare good law. We have set them all out and they speak for themselves. In no way do they declare good law. Nor can any two or three of them be put together so as to declare good law in a case under the humanitarian rule.

IV. Learned counsel for respondent tries to link two or more of these instructions together and urge that when read together they declare good law. They do not declare good law in a case of this kind, whether they all be read together, or are read in blocks of two or more. So we shall take our own course in the discussion of them.

Instruction 9 is an outright instruction on contributory negligence. It is a fact that it does not say to the jury to find against plaintiff if it found the deceased was guilty of negligence contributing to her in-

juries and death, but it does require the jury to find whether or not deceased was guilty of negligence which contributed to her death. It is followed by Instruction 10, which tells the jury, that if the jury, under the evidence and the instructions, finds Anna Schultz guilty of contributory negligence, and then further find that defendant's chauffeur was exercising ordinary care to look ahead for pedestrians, and after he saw Anna Schultz, exercised ordinary care to extricate her from the hazard to which she had negligently exposed herself, then the finding should be for defendant. These two instructions (9 and 10) when read together practically make contributory negligence an absolute defense in a humanitarian doctrine case. These instructions are not only erroneous, but they are vicious. They inject an issue which is not in a humanitarian doctrine case. Thus in Hornbuckle v. McCarty, 295 Mo. l. c. 171, supra, it is said: "The negligence, if any, of the deceased is not involved in the case." We were thus speaking in a case submitted solely on the humanitarian doctrine. See page 170 of 295 Mo., supra.

Again in Schroeder v. Wells, 310 Mo. l. c. 654, we said: "We are not prepared to say that the evidence does not make a case under the humanitarian rule. Contributory negligence is no defense to this peculiar kind of negligence." We meant the negligence which authorized a recovery under the humanitarian rule.

In Ellis v. Met. Street Railway, 234 Mo. l. c. 681, LAMM, J., in his characteristic style, has well said:

"Refused instruction numbered 9 was a mandatory one to find for defendant if the jury believed from the evidence that the boy did not look or listen, when by looking he could have seen, or by listening he could have heard, the approaching car before going upon the track. That instruction is not the law of any case to which the humanity rule is applicable; for if such antecedent act of negligence shuts off liability, although by the exercise of ordinary care after I put myself in deadly peril, a motorman could save my life, then the humanity rule is exploded as a working theory of the law and all the learning thereon goes pellmell to the dust heap. The instruction was well refused."

That the doctrine of contributory negligence has no place in a case bottomed upon the humanitarian rule is made plain by our Court en Banc through RAGLAND, J., in Banks v. Morris & Co., 302 Mo. l. c. 266, 257 S. W. l. c. 484. Judge RAGLAND there says:

"This calls for a brief consideration of the 'humanitarian rule,' as applied in this State. The doctrine from which the rule has been evolved is something more than an exception to the law of contributory negligence. It 'proceeds upon the precepts of humanity and of natural justice to the end that every person shall exercise ordinary care for the preservation of another after seeing him in peril or

about to become imperiled, when such injury may be averted without injury to others.' [Dey v. Railways, 140 Mo. App. 467, 120 S'. W. 136.] Under this doctrine 'the position of peril' is one of the basic facts of liability, it might be denominated the chief one. [State v. Trimble, 253 S. W. (Mo. App.) 1019.] It is of no consequence what brings about or continues the situation of peril. It may be through the obliviousness of the one imperiled, or through his inability to extricate himself from his environment, or through his efforts to rescue another, or through his sheer hardihood or recklessness. But regardless of what occasions his peril, the law out of its extreme regard for human life makes it the duty of another who sees him in peril to exercise ordinary care to prevent injury or death. [Murphy v. Railroad, 228 Mo. 56, 128 S. W. 481; Morgan v. Railroad, 159 Mo. 262, 60 S. W. 195; Hanlon v. Railroad, 104 Mo. 388, 16 S. W. 233.]''

Following our cases, the St. Louis Court of Appeals in Bona v. Luehrman, 243 S. W. l. c. 389, has well said: "It needs no citation of authorities that an instruction on contributory negligence has no place in a case which is submitted to the jury on the humanitarian doctrine alone. See Ellis v. St. Ry. Co., 234 Mo. 657, 138 S. W. 23.''

Our other courts of appeal have likewise spoken: Moore v. St. Louis & S. F. R. Co. (K. C. Ct. of App.), 283 S'. W. l. c. 734; Elders v. Mo. Pac. Ry. Co. (Springfield Ct. of App.), 280 S. W. l. c. 1049- 1050.

The very nature of the humanitarian rule precludes contributory negligence from being an issue in the case. So, even if it be said that these instructions (9 and 10), do not make contributory negligence an absolute defense in this action, they do inject the issue of contributory negligence, and require the jury to determine the issue. Any instruction which injects a totally foreign issue into a case is not only erroneous, but dangerous and harmful. Contributory negligence is an issue wholly foreign to a case submitted purely under the humanitarian rule. Its injection was reversible error.

V. Instruction 11 is erroneous because it directs a verdict for defendant and leaves out a most important element necessary to excuse defendant. The instruction says that if the jury find that, *"as soon* as defendant's chauffeur *saw* Anna Schultz he. exercised ordinary care to avoid striking her, then . . . you will find your verdict for defendant." This leaves out the very important element of, "or should have seen her in the exercise of ordinary care." It is not enough to exercise ordinary care after the driver sees the pedestrian. At these intersections the driver must exercise ordinary care to see pedestrians. The instruction indicates this to be the duty in the first part thereof, but

the latter part only requires the exercise of ordinary care to avoid injury after the woman had been seen. In this case she was in front of the truck but two feet when seen. This instruction is erroneous. To say the very least it would be highly misleading.

We shall not discuss No. 12. It may be right upon defendant's theory of the case.

The giving of either 8, 9, 10 or 11 would be sufficient error to reverse the judgment in this case.

For the giving of the aforesaid instructions the judgment is reversed and the cause remanded. All concur.