MARIA SILLIMAN, Appellant, v. MUNGER LAUNDRY COMPANY.—44 S. W. (2d) 159.

Division Two, December 1, 1931.

236

*C. L. de Renthel, Mark D. Eagleton* and *James A. Waechter* for appellant.

*Allen, Moser & Marsalek* for respondent.

238

HENWOOD, J.—This is a suit in which the plaintiff seeks to recover damages in the sum of $50,000 for personal injuries alleged to have been caused by the negligence of defendant's agent while driving defendant's automobile truck on a public street in the city of St. Louis. The trial resulted in a verdict and judgment for defendant, and plaintiff appealed.

For the purposes of this opinion, the following admissions and evidence will be sufficient:

It was admitted at the trial that, at the time plaintiff was injured, Delmar Boulevard and Goodfellow Avenue were public streets in the city of St. Louis; that the distance between the south rail of the south street car track on Delmar and the south curb of Delmar was twenty-six feet; that, on the west side of the intersection of Delmar and Goodfellow and immediately south of and parallel to the south rail of the south street car track on Delmar, there was a safety zone, forty or fifty feet in length and about four feet in width, marked on the pavement of Delmar; and that the truck which struck plaintiff was owned by defendant and driven by defendant's agent.

Plaintiff testified: Delmar Boulevard runs east and west. Goodfellow Avenue runs north and south, and into Delmar, but does not extend south of Delmar. There are two street car tracks on Delmar. Street cars run eastwardly on the south track. The safety

zone on the south side of Delmar, west of the intersection of Delmar and Goodfellow, is directly in front of a garage located at the southwest corner of the intersection. Adjoining the garage on the west side is a doctor's residence, and next to that an oil station. About eleven o'clock in the morning of December 11, 1925, she walked south along the west side of Goodfellow to Delmar, and across Delmar to the southwest corner of the intersection. She stood there for a few moments, looking west, waiting for an east-bound street car. She first saw the street car about opposite the oil station, and then started toward the safety zone. At that time, she saw an automobile at Laurel Avenue, about four hundred feet west, coming east on Delmar. When she was in the safety zone, something struck her. She heard no horn or signal of any kind from an automobile. She was rendered unconscious. She was sixty-nine years of age at the time she was injured. On cross-examination, she said: An automobile was parked at the south curb of Delmar, about eight or ten feet west of the place where she stepped into the street. In going from the curb to the safety zone, she walked "a little bit towards the northwest." She walked "just like" she always walked. She entered the safety zone, at about the middle of it. The street car was then standing there. The front door of the street car, where plaintiff intended to enter, was some distance east of her. The motorman failed to open the door. She then walked "a few steps to the east," intending to rap on the door. She was "very close to the side of the street car," and the south half of Delmar was "all open." Something came "from behind" and struck her, and that was the last she remembered.

George E. Schwartz testified: He was a passenger on the street car, sitting in the third seat from the front, on the north side. Just before the street car stopped at Goodfellow, he saw plaintiff about midway between the south curb and the car. He saw the truck, going east, at about twenty-five miles an hour. The right side of the truck struck plaintiff. The truck swerved sharply to the left immediately before the collision. At this time, plaintiff was midway between the street-car track and the curb, or may be a little closer to the track. If the driver had not swerved the truck to the left the front end of the truck would have struck plaintiff. He did not hear the driver of the truck sound any warning of any sort.

Malaciah McGuire testified: He was standing in the vestibule, at the front end of the street car. He did not see the accident. He was looking east at that time. The street car came to a sudden stop at Goodfellow, and he heard some one say a lady was hurt. He then turned and saw plaintiff lying in the safety zone.

Emma R. Barnett testified: She was a passenger on the street car, sitting about the middle of the car, on the north side. She and plaintiff had arranged to meet downtown, east of Goodfellow. As

the street car approached Goodfellow, she was not looking for plaintiff there, but she could see down the street, and thought she saw plaintiff's hat. She remained in her seat, facing east. The car came to a stop, stood there for some time, and a woman got off at the middle door. Then she saw people getting up and looking out. She arose from her seat, looked outside, and saw the plaintiff lying next to the street car, at the side of the track.

Owen G. Qualls, conductor of the street car, testified: As the street car approached Goodfellow, the bell rang, and the motorman stopped the street car at Goodfellow. There was a lady standing in the middle doorway, and he opened the door. This lady did not get off, and he closed the door. While the door was open, this lady "kind of waved her hand." He did not know whether she was waving at anybody or not. About that time, the truck passed, going east. It was traveling about four or five feet from the south side of the street car. The truck was going twelve to fifteen miles an hour. He heard a crash, but did not see the truck strike plaintiff. He got off the car, and found plaintiff lying in the street, about ten or twelve feet south of the street car. He heard no signal from the truck.

F. G. Wilson, motorman of the car, testified: He stopped the street car at Goodfellow in response to a bell in the rear of the car. There was no passenger in the safety zone at that time. When the street car reached the safety zone, plaintiff was at the curb, at the south side of Delmar. She came towards the street car, and when she was within about twelve or fifteen feet of it, his view was obstructed by the truck, which swerved to the left and passed plaintiff. When he first saw this truck, it was eight or ten feet west of the front door of the street car. He next saw plaintiff lying in the street, with her feet at about the southeast corner of the safety zone, and her head out toward the middle of the street.

Norman Gaskill, driver of the truck, testified: He was driving east on Delmar. He saw the street car stop when the truck was some distance to the west. The middle door of the street car was opened, but no one got off. He saw a lady in the street car, "waiting." He watched the car, and, seeing no one get off, continued eastwardly, south of the safety zone. There were automobiles parked along the south curb of Delmar, and, as he passed the middle door of the street car, plaintiff stepped from behind "the parked car" into the side of his truck. As soon as he saw plaintiff, he swerved the truck to the left. She was struck by a handle on the right side of the truck. When the truck struck plaintiff, she was seven or eight feet from the south curb of Delmar. If he had swerved the truck to the right, the front end of the truck would have struck plaintiff. It was a bright, clear day. The street was dry. The brakes of the truck were in good working order. He was traveling at the rate of

fifteen to eighteen miles per hour. At that rate of speed, he could have stopped the truck in fifteen to twenty feet.

The petition contains nine specifications of negligence, including negligence under the common law, the statutes of this State, the ordinances of the city of St. Louis, and the humanitarian rule as established in this State.

The answer is a general denial, coupled with a plea of contributory negligence.

The reply is a general denial of the allegations of the answer.

Plaintiff submitted her case to the jury solely on the alleged negligence of defendant's agent in failing to observe the humanitarian rule, and a verdict for plaintiff was predicated upon a finding of such negligence in the following instruction (plaintiff's Instruction No. 1):

"1. The Court instructs the jury that if you find and believe from the evidence that on the occasion in question plaintiff, while in and upon Delmar Avenue, at or near its intersection with Goodfellow Avenue, became and was in a position of imminent peril of being struck by defendant's automobile truck, and that the chauffeur in charge of said truck either saw, or by the exercise of ordinary care on his part could have seen, the plaintiff in the aforesaid position of imminent peril, if you do so find, in time thereafter, by the exercise of ordinary care, with the means and appliances at hand and with reasonable safety to defendant's said truck and its occupants, to have stopped said truck or slackened the speed thereof, or swerved the same, and that by so doing, if you do so find, said chauffeur could thus and thereby have avoided striking the plaintiff; and if you further find that said chauffeur did fail to stop said truck, or slacken the speed thereof, or swerve the same, and that in so failing, if you do so find, said chauffeur then and there failed to exercise ordinary care and was guilty of negligence; and if you further find that plaintiff was struck and injured as a direct result of said negligence (if you find from the facts said chauffeur was guilty of negligence as aforesaid either in failing to stop or slacken the speed of said truck, or in failing to swerve said truck, after plaintiff became in a position of imminent peril of being struck thereby, if you do so find), then your verdict must be in favor of the plaintiff and against the defendant, and this is true even though you may find and believe from the evidence that plaintiff herself was guilty of negligence in getting herself into the aforesaid position of imminent peril, if any."

Plaintiff contends that the trial court erred in giving defendant's instructions numbered 3, 4 and 5, which read as follows:

"3. The court instructs the jury that if you find and believe from the evidence that as plaintiff moved northwardly across Delmar Boulevard she failed to look for the approach of eastbound vehicles

and that by looking she could have seen the automobile truck of defendant eastbound on said Delmar ·Boulevard in time, by the exercise of ordinary care on her part, to have avoided a collision therewith, and if you further find and believe from the evidence that in so failing to look, if you find and believe she did so fail to look, plaintiff failed to exercise ordinary care for her own safety and was negligent in that respect, and if you further find and .believe from the evidence that such negligence, if any, on the part of plaintiff directly contributed to cause her injuries, *then the court instructs the jury that such negligence, if any, on her part bars her right to recover in this case and your verdict should be in favor of defendant,* unless you should find the facts to be as set forth in Instruction No. 1. [Our italics.]

"4. The court instructs the jury that if you find and believe from the evidence that as the automobile truck of the defendant approached the place of the accident described in the evidence the plaintiff suddenly, and without any warning of her intention so to do, moved from a place of safety and into the path of and against defendant's automobile truck and that at the time she moved as just described, if you find that she did, said automobile truck was so close to plaintiff that the operator thereof could not avoid a collision with plaintiff, and if you further find and believe from the evidence that in so moving, if you believe she did, plaintiff failed to exercise ordinary care for her own safety and was negligent, and if you further find and believe from the evidence that such negligence, if any, on the part of plaintiff, directly contributed to cause her injuries, *then the court instructs you that plaintiff is not entitled to recover and your verdict should be in favor of defendant,* unless you should find the facts to be as set forth in Instruction No. 1. [Our italics.]

"5. What constitutes ordinary care as used in these instructions depends upon the facts of each particular case. It is such care as a person of ordinary prudence would exercise (according to the usual and general experience of mankind) in the same situation and circumstances as those of the person or persons in this case with reference to whom the term 'ordinary care' is used in these instructions. The omission of such care is negligence in the sense in which that word is used in these instructions in reference to the *plaintiff.*" [Our italics.]

I. We will first consider defendant's contention that plaintiff failed to make a case for the jury under the humanitarian rule, and that, therefore, plaintiff is not in a position to complain of its (defendant's) instructions numbered 3, 4 and 5.

The evidence most favorable to the plaintiff shows that,

at the time she left the south curb of Delmar and started to walk across the south half of Delmar to the safety zone, the truck was about four hundred feet west of her, coming east on the south side of Delmar; that she left the south curb of Delmar at a point opposite the safety zone, walked "a little bit towards the northwest," across the south half of Delmar, to the middle of the safety zone, then walked "a few steps to the east," towards the front door of the street car, and, while thus proceeding in the safety zone, at or near the southeast corner thereof, she was struck by the right side of the truck, which approached her from the west or "from behind;" that the truck was moving at the rate of fifteen to eighteen miles per hour; that, at that rate of speed, the driver could have stopped the truck in fifteen to twenty feet; and that, at that point, the south half of Delmar was "all open."

According to this evidence, plaintiff, while walking across the south half of Delmar, from the south curb to the safety zone, was entitled to the right of way as against the truck, and she would have been in no danger after entering the safety zone if the truck had not been driven through the safety zone or in close proximity thereto. Under the circumstances, however, she was in a position of imminent peril from the time she started to walk "a few steps to the east," from the middle of the safety zone to the front door of the street car, with the truck approaching her from the west or "from behind." While she was walking "a few steps to the east," and in a position of imminent peril, the truck, moving at the rate of fifteen to eighteen miles per hour, traveled a much greater distance than fifteen to twenty feet, although the truck could have been stopped in fifteen to twenty feet. Moreover, while plaintiff was walking "a few steps to the east," and in a position of imminent peril, that part of Delmar lying south of the safety zone, twenty feet or more in width, was "all open" and available, at that point, for the use of the truck as a path of travel.

It follows that plaintiff made a case for the jury under the humanitarian rule. In other words, the jury would have been warranted in finding that the driver of the truck saw, or, by the exercise of ordinary care, could have seen, plaintiff in a position of imminent peril, in time, by the exercise of ordinary care, to have avoided striking her, by stopping the truck, or by swerving it to the right of her and into that part of Delmar lying south of the safety zone. [Banks v. Morris & Co., 302 Mo. 254, 257 S. W. 482; Schulz v. Smercina, 318 Mo. 486, 1 S. W. (2d) 113.]

II. This brings us to a consideration of defendant's instructions numbered 3, 4 and 5.

244

In defendant's instructions numbered 3 and 4, the jury were told, in substance and effect, that, if they found plaintiff guilty of contributory negligence, their verdict should be in favor of defendant, unless they found the facts to be as set forth in plaintiff's Instruction No. 1.

When the plaintiff elected to submit her case to the jury under the humanitarian rule alone, all of the other specifications of negligence contained in her petition passed out of the case, and the defense of contributory negligence also passed out of the case, contributory negligence being no defense under the humanitarian rule. And, while defendant's instructions numbered 3 and 4 did not present the defense of contributory negligence as a defense under the humanitarian rule, they did inject into the case a foreign issue which the jury were required to determine in passing on the real issue, and, therefore, were confusing and misleading. In his discussion of a similar situation, in Schulz v. Smercina, supra, Judge GRAVES said: "The very nature of the humanitarian rule precludes contributory negligence from being an issue in the case. So, even if it be said that these instructions (9 and 10), do not make contributory negligence an absolute defense in this action, they do inject the issue of contributory negligence, and require the jury to determine the issue. Any instruction which injects a totally foreign issue into a case is not only erroneous, but dangerous and harmful. Contributory negligence is an issue wholly foreign to a case submitted purely under the humanitarian rule. Its injection was reversible error."

In defendant's Instruction. No. 5, the words "ordinary care" were defined, and the jury were told that the omission of ordinary care was negligence in the sense in which the word "negligence" was used in reference to plaintiff in defendant's instructions numbered 3 and 4.

This instruction may have left the jury with the impression that there was a difference in the meaning of the words "ordinary care" and the word "negligence" as used in reference to plaintiff in defendant's instructions numbered 3 and 4 and as used in reference to the driver of defendant's truck in plaintiff's Instruction No. 1, and may have left the jury with the further impression that negligence on the part of plaintiff barred a recovery by her under the humanitarian rule. So, in these two particulars, at least, this instruction was confusing and misleading.

For the reasons mentioned, each of these instructions (defendant's instructions numbered 3, 4 and 5) was erroneous and prejudicial. And, taken together, they emphasized a foreign issue and minimized the real issue in the case, and were calculated to confuse and mislead the jury, rather than to enlighten the jury, as to the real issue

in the case. See Schulz v. Smercina, supra; Burke v. Pappas, 316 Mo. 1235, 293 S. W. 142; Shumate v. Wells, 320 Mo. 536, 9 S. W. (2d) 632; Causey v. Wittig, 321 Mo. 358, 11 S. W. (2d) 11, and cases cited.

Because of the errors of the trial court in giving said instructions, the judgment is reversed and the cause remanded. All concur.