GUTHRIE JEWELL HICKMAN, A MINOR, BY IRENE HICKMAN, HIS NEXT FRIEND, RESPONDENT, v. ST. LOUIS DAIRY COMPANY, A CORPORATION, APPELLANT.—90 S. W. (2d) 177.

St. Louis Court of Appeals. Opinion filed February 4, 1936.

*Oakley & Frank* and *R. J. Lee* for appellant.

*Fred Berthold* and *Emery W. Chase* for respondent.

BECKER, J.—This is an action for damages brought by plaintiff through his next friend, against the defendant for injuries alleged to have been sustained on June 2, 1931, when plaintiff was nine months of age, as the direct result of drinking some of the contents of a bottle of milk sold by defendant to plaintiff's mother, which milk contained ground and broken glass.

The case was tried to a jury which returned a verdict in favor of plaintiff and against the defendant in the sum of $1500. From the resulting judgment defendant appeals.

Plaintiff's petition sets up two assignments of negligence: First, that defendant, its agents and servants, sold milk filled with ground and broken glass to the plaintiff, for consumption, when they knew or by the exercise of ordinary care could have known that plaintiff would drink said milk and would become violently sick and injured; second, that an inspection on the part of defendant, its agents or servants, would have disclosed broken and ground glass in said milk in time, by the exercise of ordinary care, to have removed the same, and the defendant could thereby have avoided injuring plaintiff, but carelessly and negligently failed to do so, and plaintiff sustained serious and violent injury and sickness.

The defendant's answer was a general denial.

Defendant's first assignment of error is in effect that plaintiff failed to make out a case for the jury, and that the trial court therefore erred in overruling its demurrer offered at the close of plaintiff's case. The point is without merit.

In determining the question as to whether or not plaintiff made

out a case for the jury we are mindful that on demurrer plaintiff's evidence, whether contradicted or not, must be regarded as true, so long as it is not impossible as opposed to the physics of the case or entirely beyond reason, and that defendant's evidence must be taken as false where it is contradicted by that of plaintiff. Furthermore, plaintiff is entitled to the benefit of every reasonable inference favorable to his case, which the evidence tends to support. [Grubb v. Curry (Mo. App.), 72 S. W. (2d) 863; Marshak v. Grocery Co. (Mo. App.), 83 S. W. (2d) 185, l. c. 190; Freeman v. Term. R. R. Co. (Mo. App.), 78 S. W. (2d) 559; Mick v. Thompson Co. (Mo. App.), 77 S. W. (2d) 470, l. c. 474; Howard v. Sacks (Mo. App.), 76 S. W. (2d) 460, l. c. 463; Steger v. Meehan (Mo.), 63 S. W. (2d) 109, l. c. 110.]

So too, it must be remembered that a jury may believe all of the testimony of any witness or may reject the whole of it as untrue, or it may accept part of a witness' testimony and reject as untrue the remainder thereof, as the jury find the same to be true or false when viewed and considered in relation to the other testimony and the facts and circumstances in the case. [Rockenstein v. Rogers (Mo.), 31 S. W. (2d) 792, l. c. 798; Anderson v. Davis, 314 Mo. 515, 284 S. W. 439; Gould v. Ry. Co., 315 Mo. 713, l. c. 723, 290 S. W. 135.]

Viewed in light of the rule above stated there is testimony in the record which if believed tends to prove that plaintiff's mother was a regular customer of the defendant, and on the day in question, and for some time prior thereto, had been purchasing a quart and a pint of milk each day. This milk was delivered by defendant's driver in the morning between the hours of six and six-thirty; that it was customary for the driver in making his delivery of the milk, to set the bottles on the top step of the stairs leading to the door of the plaintiff's home; that the driver, in carrying the bottles of milk from his wagon to the doorstep would place the bottles in a specially designed wire basket, the basket being made in a manner intended to avoid the bottles striking together; that on June 2, 1931, defendant's driver placed a quart and a pint bottle of milk on the top step of plaintiff's home at the usual time; that plaintiff's father, a short time thereafter, took the milk from the door step, walked through the four rooms of the home, and placed the bottles of milk in the refrigerator; that some time after eight o'clock that morning plaintiff's mother went to the refrigerator and took out the pint bottle of milk, took it to the kitchen sink, examined the top of the bottle, then placed it beneath the faucet and washed off the top and thereafter removed the cap and put a nipple on the bottle, which nipple was practically new, and the top of which was punctured with three small holes to permit the milk to be drawn through when in use for feeding an infant; that the mother gave the bottle

of milk to plaintiff to drink therefrom and went about her work; that a short time thereafter the mother, hearing the baby cry, went to him and found that the baby had vomited curd which contained blood, and upon making an examination thereof she found that the curd contained several needle-like slivers of glass, and one or two small particles of glass; that she thereupon called a doctor who in her presence drained the balance of the milk in the bottle through a clean napkin and found in the napkin other slivers and pieces of glass, and that an examination of the bottle disclosed several slivers of glass on the inside thereof near the top.

On the question as to whether or not the milk was the milk left by defendant on the morning in question, there is the direct testimony of the mother that she examined the bottle and cap thereof and found it to be the bottle containing the usual and customary cap of the defendant.

In defendant's case we find testimony in aid of plaintiff's case. The sales superintendent for the defendant company testified, with reference to the physical possibility that bottles of milk when carried in the wire basket by the driver from the wagon to the customer, might bump and thereby cause chips of glass to splinter off from the inside of the bottle.

"Q. Now, when they do jump off the wagon with pint bottles mixed in with quart bottles, they do bump together, don't they? A. I guess they do, depending on the driver.

"Q. Well, I say that could happen, couldn't it? A. Possibly.

"Q. And the bumping together of these bottles could cause a breakage and chipping inside the bottle, could it not? A. If they were bumped hard enough together."

In light of the testimony we have set out above we rule that there was sufficient competent evidence to take the case to the jury, and that the demurrer was well ruled.

Appellant next contends that instruction numbered two given at the request of plaintiff injected into the case a foreign issue when considered in light of the pleadings and the evidence in the record, and that this error was prejudicial to the rights of the defendant below. Instruction numbered two reads as follows:

*"The Court instructs the jury that if you find and believe from the evidence that plaintiff's mother used a nipple which contained a hole larger than usual or customary, and that the use of said nipple with said large hole therein, contributed to plaintiff's injury and sickness, if any, yet, if you further believe and find from the evidence that the defendant, its agents and servants, were also guilty of negligence as specified and defined in the other instructions given to you in this case; and if you further believe and find from the evidence that the injury to plaintiff, if any, and the sickness of plaintiff, if any, was caused by the combined and concurring negligence of plaintiff's*

*mother in furnishing said nipple on said bottle,* and the carelessness and negligence, if any, of the defendant, its agents and servants, in selling to plaintiff milk that contained broken and fine particles of glass (if you so find that the defendant did sell to plaintiff milk containing broken and fine particles of glass), as defined and specified in the other instructions given to you in this case; and if you further believe and find from the evidence that the defendant, its agents and servants, were guilty of carelessness and negligence, if any, as defined and specified in the other instructions given to you in this case; and if you further believe and find from the evidence that the carelessness and negligence, if any, of the defendant, its agents and servants, in selling milk to plaintiff containing broken and fine particles of glass, directly caused or contributed to cause plaintiff to suffer injuries, if any, or to become sick and ill, if you so find, then plaintiff is entitled to recover, and your verdict must be for the plaintiff and against the defendant.''

In considering this assignment of error we have in mind that plaintiff's cause of action is based on the charge that defendant, on June 2, 1931, sold plaintiff, through his mother, a bottle of milk to be consumed by said plaintiff baby, which bottle of milk, it is alleged, contained ground and broken glass, and that plaintiff, upon drinking some of the milk, was caused to become violently ill. The defendant's answer is merely a general denial and does *not* set up concurring or contributory negligence on the part of plaintiff's mother as a defense.

Under the pleadings it was necessary for plaintiff, among other things, to prove, by a preponderance of the evidence, that there was in fact glass in the milk at the time the defendant's driver left it in the usual place on the steps of the home of plaintiff's mother. And the defendant, under its general denial, could exculpate itself if the jury, from a preponderance of the evidence, believed and found that there was glass in the milk, but that such glass was not in the milk at the time the bottle left the hands of defendant's driver, but got into the milk as the result of the negligence of some person other than the defendant, its servant or agent, after the defendant's driver had made delivery of the milk as stated.

The pleadings did not raise an issue as to whether or not plaintiff's mother used a nipple ''which contained a hole larger than usual or customary, and that the use of said nipple with said larger hole therein, contributed to plaintiff's injury and sickness;'' and furthermore there is absolutely no testimony in the record in support of any such issue. What the record does disclose is that plaintiff, in aid of his allegation that the glass which was alleged to be in the bottle of milk and passed through the nipple when the plaintiff was drinking the milk from the bottle, adduced testimony that the nipple was practically a new nipple with three small holes

in the end thereof, and that after plaintiff's mother discovered that plaintiff had vomited curd with blood in it, and had examined the curd and found glass therein, she examined the nipple through which the glass had come and found that "two of the holes had merged together in one; that when the two holes were merged together, the two would be pretty well across the nipple—the top of it;" that "she didn't know when that had occurred—when one hole merged into another hole; that it was a new nipple and she had looked at it; that he had new teeth and of course she guessed it just went through."

We cannot view this testimony of plaintiff's mother as having been adduced for the purpose of showing her own negligence in having used a nipple with too large a hole therein, but rule that the testimony was given in support of the issue properly submitted by the pleadings in the case, namely, as tending to prove the physical possibility of not alone the needle-like slivers of glass, but also the several pieces of broken glass as well, being able to pass through the opening in the nipple, which slivers and broken pieces of glass plaintiff testified she had found in the curd that the baby had vomited after drinking the milk.

Plaintiff's instruction numbered two submitted to the jury as an issue in the case the question as to whether or not plaintiff's mother used a nipple which contained a hole larger than usual and customary, and whether or not the use of said nipple with said larger hole therein contributed to plaintiff's injury and sickness, when in point of fact no such issue was raised by the pleadings in the case, and no testimony whatsoever appears in the record upon any such issue. This foreign issue thus injected into the case is an issue which had it actually been in the case would have been one in which the burden of proof rested on the defendant. The instruction, in thus requiring the jury to pass upon an issue not in the case, may well have tended to confuse and mislead the jury as to the real issue in the case. To inject a totally foreign issue into a case in an instruction had been held "not only erroneous but dangerous and harmful." [Silliman v. Ldry. Co. (Mo.), 44 S. W. (2d) 159; Schultz v. Smercina, 318 Mo. 486, 1 S. W. (2d) 113, l. c. 120; Gray v. Term. Co. (Mo.), 52 S. W. (2d) 809, l. c. 813.]

Nor can be concur in the view expressed by respondent that the objectionable part of respondent's instruction numbered two was warranted by the fact that at defendant's request the court gave an instruction numbered six which directed the jury, "that if you find and believe from the evidence that the injuries to plaintiff complained of were not caused by any negligence or carelessness on the part of defendant, its agents or servants, but that such injuries were the result of the negligence and carelessness on the part of other persons, after the milk left the possession of defendant, and

was delivered to plaintiff, and that said person or persons were not in the employ of defendant, then your verdict must be for defendant.''

Defendant's instruction numbered six deals with the issue presented by the pleadings, namely, whether or not through the negligence of the defendant the milk which it delivered to plaintiff's mother, for plaintiff's consumption, contained glass which, upon drinking it, caused plaintiff injuries. It must be remembered that the burden of proof is on the plaintiff to show that the glass was in the milk at the time it was delivered by defendant's driver and left on the doorstep of plaintiff's mother. Therefore, in light of defendant's general denial, defendant was entitled to an instruction telling the jury that if the glass got into the milk when defendant left the milk at the home of plaintiff's mother, then defendant was not liable. In this connection it is to be borne in mind that plaintiff had introduced evidence from which plaintiff sought to have the jury infer that the glass could have gotten into the milk through the manner of the handling of the bottles by the driver in making delivery thereof, after the milk had been taken from the plant of the defendant, namely, by the bumping together of the bottles in the wire basket in which the driver testified he carried the milk from his wagon to the front door of the home of plaintiff's mother; also that there is testimony that the milk stood for a period of time on the doorstep before being carried into the house by the father of the plaintiff, and that the father carried the pint bottle of milk in question, together with a quart bottle, from the front door through the four rooms of the house and placed both of the bottles in the refrigerator, and that plaintiff's mother testified that she had taken the pint bottle of milk out of the refrigerator and washed it off at the sink in the kitchen and had not bumped it against the faucet in so doing.

Upon the record we are clear in the view that defendant was entitled to instruction numbered six and that the giving thereof cannot be held to have warranted the inclusion in plaintiff's instruction numbered two of the foreign issue submitted therein, or to have cured the error of submitting such foreign issue therein upon the theory of acquiescence or joinder therein by defendant's said instruction numbered six.

For the prejudicial error noted, the judgment should be reversed and the cause remanded. It is so ordered. *Hostetter, P. J.,* and *McCullen, J.,* concur.