ANNA BORGSTEDE v. WILLIAM WALDBAUER and G. H. WETTERAU &
SONS GROCERY COMPANY, a Corporation, Appellants.—88 S. W.
(2d) 373.

Court en Banc, November 20, 1935.

1206

*Forest P. Tralles* for William Waldbauer; *Fordyce, White, Mayne & Williams* and *G. Carroll Stribling* for G. H. Wetterau & Sons Grocery Company.

1208

*Jeffries, Simpson & Plummer* for respondent.

WESTHUES, C.—Respondent, as the widow of Louis Borgstede, obtained a judgment against appellants in the sum of $10,000 for the death of her husband caused by the alleged negligence of Waldbauer. From this judgment both defendants appealed.

The case was submitted to the jury under the humanitarian doctrine. Appellant, G. H. Wetterau & Sons Grocery Company, assigned as error the refusal of the trial court to give an instruction in the nature of a directed verdict. The reason assigned was that the evidence failed to show that appellant, Waldbauer, was, at the time of the accident, acting in the capacity of its servant. Waldbauer was employed by the grocery company as a salesman and collector of accounts. In making sales and collections he traveled in a Ford coupe. On August 14, 1930, he drove to the northern part of the city of St. Louis for the purpose of collecting an account. After making the call and at about eight o'clock P. M., he proceeded south on Grand Boulevard intending to go to his home on Leona Avenue in south St. Louis. As Waldbauer was driving into the intersection of Grand Boulevard and St. Louis Avenue the deceased, who was walking across the street in a westerly direction, came in contact with Waldbauer's car. Deceased died the following day as the result of the injuries received in the accident.

It is apparent from the facts enumerated, which were conceded at the trial, that Waldbauer was, at the time of the accident, acting

within the scope of his employment. It was just as necessary for Waldbauer to return as it was for him to go to north St. Louis, as he had no business of his own there, but went in the interest of his employer. He was, therefore, about his master's business. A salesman must of necessity travel from place to place to perform his duties. It was shown that the company knew Waldbauer was using a car in making sales and collections. In 42 Corpus Juris, page 1128, section 900, we read:

"Where, with the express or implied assent of the employer, an employee uses a vehicle which the employee owns in the discharge of his duties, the employer will be liable for an injury occasioned by its negligent operation by the employee while acting within the scope of his employment." [See, also, Brauch v. Skinner Bros. Mfg. Co., 330 Mo. 760, 51 S. W. (2d) 27.] A salesman, returning home from a journey on behalf of his master is acting within the scope of his agency. [Teague v. Laclede-Christy, 331 Mo. 147, 52 S. W. (2d) 880; Newman v. Rice-Stix Dry Goods Co., 335 Mo. 572, 73 S. W. (2d) 264, l. c. 271 (13, 14).]

Respondent's evidence supports a finding that deceased started to cross Grand Boulevard from east to west along the northerly boundary line of St. Louis Avenue at a time when the electric stop and go signs were in favor of east and west travel; that when he reached about the center of Grand Boulevard the lights changed so as to favor north and south travel. Waldbauer, driving south on Grand Boulevard, struck deceased when he was west of the southbound car tracks. It is respondent's contention that the evidence justified the submission of the case under the humanitarian doctrine. This was not seriously disputed by appellant. It will, therefore, not be necessary to go into detail as to how the accident happened. Appellants, however, contend that the trial court erred in giving respondent's instructions Nos. 1 and 2. We will comment on Instruction No. 1 later in the opinion.

Instruction No. 2 defined the term "highest degree of care" as follows:

"By the use of the term 'highest degree of care' in these instructions, the court means such care, skill and foresight as a very competent and prudent person would use and exercise under like or similar circumstances."

"Highest degree of care" means that degree of care and caution which a very careful and prudent person would use or exercise under similar circumstances. [Gude v. Weick Bros. Undertaking Co., 16 S. W. (2d) 59, 322 Mo. 778; Jackson v. Southwestern Bell Tel. Co., 219 S. W. 655, l. c. 657, 281 Mo. 358.] Appellants contend that the instruction above quoted not only required the highest degree of care to be exercised by Waldbauer, but in addition required the jury to find that he possessed such skill as is possessed by a very competent person. In this case meaning, such skill as would be possessed by a

very competent driver of motor cars. We are of the opinion that appellants' contention is correct. Respondent, however, argues that there is no degree of care higher than the highest and, therefore, the instruction did not cast a greater burden of care upon Waldbauer than the law required. That there can be no degree of care higher than the highest will be conceded without argument. The instruction, however, goes further and requires such skill as would be possessed by a very competent person. Respondent has cited authorities which, when analyzed, condemn the instruction. First of all we must keep in mind that absent the provisions of Section 7775, Revised Statutes 1929 (Mo. Stat. Ann., p. 5197), a driver of a motor vehicle is only required to exercise that degree of care that an ordinarily prudent person would use under like or similar circumstances. [Garvey v. Ladd (Mo. App.), 266 S. W. 727, l. c. 731 (3) ; Welp v. Bogy, 8 S. W. (2d) 599, l. c. 600 (2-6), 320 Mo. 672; 1 Blashfield's Cyclopedia of Automobile Law, p. 255, sec. 1, also p. 484, sec. 18.] Section 7775, supra, of our statutes is silent as to the skill required of operators of motor vehicles. We must, therefore, look to the common law. Respondent in his brief has quoted from Williams v. Hays, 143 N. Y. 442, l. c. 454, the following, which we think states the law:

" 'The standard man is no individual man, but an abstract or ideal man of ordinary mental and physical capacity and ordinary prudence. The particular man whose duty of care is to be measured does not furnish the standard. He may fall below it in *capacity* and prudence, yet the law takes no account of that, but requires that he should come up to the standard and his duty be measured thereby.' "

The following from 39 Harvard Law Review, page 867, quoting from Holmes on The Common Law, was also found in respondent's brief:

" 'When men live in society, a certain average of conduct, a sacrifice of individual peculiarities going beyond a certain point is necessary to the general welfare. If, for instance, a man is born hasty and awkward, is always having accidents and hurting himself or his neighbors, no doubt his congenital defects will be allowed for in the courts of Heaven, but his slips are no less troublesome to his neighbors than if they sprang from guilty neglect. His neighbors accordingly require him, at his proper peril, to come up to their standard, and the courts which they establish decline to take his personal equation into account.' "

If allowance be given in the courts of Heaven to a man for his congenital defects which render him below the average man, then by the same rule of justice the ordinary man will not be held accountable on a par with an individual of natural extraordinary intelligence. Somewhere in the good book it is related that our Supreme Master gave to one person one hundred talents, to another fifty and

to a third ten and held them to account in accordance to the talents bestowed upon them. So also, under the law of the land, the average man is not required to possess the skill of a very competent person but only such skill as is possessed by that "abstract or ideal man of ordinary mental and physical capacity and ordinary prudence." Man may fall below in capacity or he may rise above the average, but the law in negligence cases measures him according to the average. So by the common law a driver of motor vehicles is only required to possess such skill as is possessed by ordinarily competent drivers and his skill is not to be measured by the standard set by very competent drivers. This is supported by good authority. [Ulmer v. Farnham (Mo. App.), 28 S. W. (2d) 113, l. c. 116 (8, 9); Arnold v. San Francisco-Oakland Term. Rys. (Cal.), 164 Pac. 798, l. c. 799 (1, 2), (3); Massie v. Barker (Mass.), 113 N. E. 199; Roberts v. Ring (Minn.), 173 N. W. 437, l. c. 438 (3); Hughey v. Lennox (Tex.), 219 S. W. 323, l. c. 325 (5); 1 Blashfield's Cyclopedia of Automobile Law, p. 280, sec. 27, and 42 C. J. 897, sec. 602.] In the very nature of things the skill of the average driver of motor vehicles increases as the perplexity of driving increases due to the greater number of cars on the highways and the speed of driving. A driver of motor cars is, under the law, required to be a competent driver. Note what was said in Jackson v. Southewestern Bell Tel. Co., 281 Mo. 358, 219 S. W. 655, l. c. 658 (2-4):

"The driver of an automobile must depend wholly upon himself and his own care, skill, and caution to guide his car safely. All persons are not qualified to run an automobile. It would be the greatest carelessness for a wholly inexperienced person, without previous instructions from competent persons, to undertake to do so. It requires not only theoretical knowledge of how to manipulate the various parts of the machinery, but practical experience in so doing to render a person competent to drive an automobile."

If, therefore, a jury be instructed that a driver of a motor car must possess the skill of a very competent person the jury will naturally and rightly interpret such a direction to mean a driver with more skill than is possessed by the average competent driver of cars.

Respondent has also cited a number of cases dealing with the care of public carriers for hire and the skill required of their operators. Those cases will not be reviewed because there is obviously a distinction, which the law has recognized, between public carriers of passengers for hire and operators of private motor cars. Respondent further argues that even though the instruction be erroneous it cannot be deemed reversible error because under the facts of the case it clearly appears that Waldbauer was negligent. Cases under the humanitarian doctrine as a rule arise in emergencies and require alertness, rapid action, quick thinking and calmness. Usually such emergencies require an operator of a car to observe the situation,

form a judgment as to what is proper and best to do and execute the design to avert the impending injury, all in a very short time. The amount of skill possessed by the driver plays an important part. If a person possesses the skill of the average driver and exercises the highest degree of care in averting an impending injury in an emergency, under the humanitarian doctrine, he has discharged his duty, even though he fails in the attempt where the exercise of the skill possessed by a very competent driver might have averted the injury. The instruction in this case cannot, therefore, be held to be harmless because the jury were told that Waldbauer was required to exercise the skill possessed by a very competent driver.

Waldbauer testified that he did not notice deceased until he fell upon the hood of the car and grabbed the left headlight, and that then the body passed by the left side of the car. There was other evidence in the record that deceased walked into the side of Waldbauer's car. Waldbauer further testified that there was no southbound traffic ahead of him at the time and he could see at least one hundred and fifty feet ahead of his car and could have stopped it within a distance of ten feet. The deceased was rolled or dragged to a point near the westbound car tracks at St. Louis Avenue. Even under this evidence, if believed by a jury, they might have found that a very competent and skillful driver could have stopped the car in time to have saved the life of deceased.

By Instruction No. 1, assailed by appellants, the case was submitted to the jury under the humanitarian doctrine. A criticism made is that the instruction, without requiring the jury to find that deceased was oblivious of his dangerous situation, authorized the jury to find for plaintiff upon the hypothesis that Waldbauer, after seeing deceased in danger or by the highest degree of care could have so discovered him, failed to give deceased a warning. Failure to warn and obliviousness go hand in hand. Warning is of no value to a person who is fully conscious of his dangerous situation. [Pentecost v. St. Louis Merchants' Bridge Term. Railroad Co., 334 Mo. 572, 66 S. W. (2d) 533, l. c. 535 (2).] Obliviousness is often the main fact which creates the danger. [Banks v. Morris & Co., 302 Mo. 254, 257 S. W. 482, l. c. 484, 485 (3-5).] Respondent, therefore, contends that if the jury in this case found deceased was in a position of peril they of necessity found that deceased did not observe Waldbauer's car. We concede that had deceased observed Waldbauer's car he was in no apparent danger because the evidence disclosed that there was no other southbound traffic on Grand Boulevard ahead of Waldbauer's car. Ordinarily a pedestrian, seeing a car coming, would stop and let the car go by, and if in its pathway he would be expected to step out of danger. As a general rule, however, an instruction, authorizing a verdict for failure to warn, should also require the jury to find that the injured party was oblivious of the

impending peril. [See Jordan v. St. Joseph Ry., Light, Heat & Power Co., 335 Mo. 319, 73 S. W. (2d) 205, l. c. 208 (1) (2-5).]

■ The following clause in the instruction was also questioned: "And that thereafter the said William Waldbauer, by the exercise ·of the highest degree of care, through the use of the means and appliances at hand, *without injury to himself, his automobile or other persons,* could have avoided injuring the said Louis Borgstede." (Italics ours.)

It is claimed that the instruction should have read: *"Without jeopardizing the safety of himself or others"* or words to that effect. The cases of Alexander v. St. Louis-San Francisco Ry. Co., 38 S. W. (2d) 1023, l. c. 1026 (3), 327 Mo. 1012; Homan v. Mo. Pac. Ry. Co., 334 Mo. 61, 64 S. W. (2d) 617, l. c. 624 (13, 14); Spoeneman v. Uhri, 60 S. W. (2d) 9, 332 Mo. 821, give weight to that argument. We find an expression in the last case cited as follows:

"Neither should he be convicted of negligence under the humanitarian doctrine if he could have avoided injuring the appellant only by inflicting injury upon himself or third parties, *or even only by exposing himself or them to unreasonable hazard."* (Italics ours.)

Without deciding the point of whether the instruction, as written, would constitute reversible error we advise that upon another trial the instruction be written to conform to the suggestion made. Under the evidence in this case the error was probably harmless because there was no contention made at the trial or showing that third persons or Waldbauer would have been in danger had he swerved to one side or suddenly stopped his car. [See Brown v. Callicotte, 73 S. W. (2d) 190, l. c. 194 (5).] In humanitarian cases the rule seems to be, and ought to be, that a person must avoid inflicting injury to the person imperiled if it can be done by the exercise of the highest degree of care with reasonable safety to himself and others. [See Gude v. Weick Bros. Undertaking Co., 322 Mo. 778, 16 S. W. (2d) 59, l. c. 62 (3).] In the case of Banks v. Morris, supra, the question of the correctness of an instruction on this point was not discussed and was not before the court. Instructions, under this doctrine, should be so worded as to require the jury to find that the negligence, if any, of the defendants was the proximate cause of the injury.

■ Appellants complain of the court's action in refusing to give their Instruction J, which reads as follows:

"The court instructs the jury that if you find and believe from the evidence in this case that the defendant William Waldbauer was at all the times mentioned in the evidence exercising the highest degree of care in the operation of said automobile, that is, such care as a very careful and prudent person would exercise under the same or similar circumstances, and that while said automobile was being so operated by said William Waldbauer the deceased walked into

the side of said automobile, and that the said William Waldbauer did not know, or by the exercise of the highest degree of care could not have known, that deceased was about to walk into the side of said automobile, if you so find, or was in a position of imminent peril, in time thereafter, by the exercise of the highest degree of care, to have stopped, slackened the speed, swerved said automobile, or given warning of the approach so as to have prevented said injury, then the defendant William Waldbauer was not guilty of negligence and your verdict must be for the defendant.''

This instruction, as quoted, was properly refused because it authorized a verdict for defendants if Waldbauer did not know that deceased was about to walk into the side of his car. The instruction should have read, ''If Waldbauer did not know *and* by the exercise of the highest degree of care could not have known such fact.'' [Iman v. Walter Freund Bread Co., 58 S. W. (2d) 477, l. c. 480, 9-13, 332 Mo. 461.] With this modification the instruction would be correct. We are of the opinion that appellants were entitled to have such an instruction, had it been requested as submitting their theory of the case to the jury. We have not overlooked the opinion in the case of Causey v. Wittig, 321 Mo. 358, 11 S. W. (2d) 11, l. c. 14 (2-5), by the court en banc, cited by respondent, where it was held by a majority of four to three that such an instruction was erroneous because it did not require the jury to find that such a fact, that is deceased walking into the side of the car, was the sole cause of the injury, and also because it singled out and gave undue prominence to certain facts favorable to defendant. The instruction reads as follows:

'' 'The Court instructs the jury that if you find and believe from the evidence that while defendant was operating his automobile north on Tower Grove Avenue, the deceased, Charles Causey, *suddenly ran across the street in front of a moving street car and toward the left rear side of defendant's automobile and in so close proximity thereto as to make it impossible for the defendant to prevent his automobile from colliding with the said deceased by the exercise of the highest degree of care in the operation thereof,* then your verdict must be in favor of the defendant.' (Italics ours.) ''

It is our view that the dissenting opinion of BLAIR, J., concurred in by two of the judges, correctly interpreted the instruction and pointed out the fallacy of the main opinion. For the reasons therein stated we overrule the Causey case insofar as it holds that the condemned instruction was faulty because it did not require the jury to find that the negligence of the deceased was the sole cause of the accident, and that the instruction gave undue prominence to certain facts favorable to defendant. The instruction, as pointed out in the dissenting opinion, was not subject to either criticism. As a rule a plaintiff's instruction, authorizing a verdict, sets forth the facts

in evidence relied on for a recovery. Has this court ever condemned such an instruction because it gave undue prominence to facts favorable to plaintiff? Then why should a defendant's instruction be condemned because it sets forth facts which, if found to be true by the jury, would, under the law, absolve him from liability? A plaintiff, by filing suit, hails a defendant into court and seeks recovery from him upon certain facts established by his evidence and submitted to the jury by instructions. If the jury find such facts to be true the instruction authorizes a favorable verdict. By every rule of justice a defendant should be accorded the same right and have his theory submitted to the jury in the same manner. Division One of this court in the case of Parker v. St. Louis-San Francisco Railroad Co., 41 S. W. (2d) 386, l. c. 388 (5), in an opinion by GANTT, P. J., said:

"Defendant was entitled to have any facts in evidence tending to sustain any defense made by it submitted to the jury. The fireman testified to the facts submitted by the instruction. And the court could not have submitted the ultimate facts without mentioning them in the instruction."

The Causey case was referred to and distinguished, but in principle the two opinions are in conflict. A defendant is not obliged to include in his instruction facts relied on by the plaintiff for a recovery. In the case of Smith v. Wells, 326 Mo. 525, 31 S. W. (2d) 1014, l. c. 1020, 1021 (1), (2), an instruction in substance and effect the same as the instruction in the Causey case was considered at length and approved. The Causey case was not mentioned. The instruction in the Causey case authorized a verdict for the defendant if the jury found that the deceased in that case suddenly ran across the street so as to make it impossible for the defendant to prevent his automobile from colliding with the deceased by the exercise of the highest degree of care in the operation thereof. "Suddenly" means unexpectedly and is a word well understood by the average layman. If a pedestrian in a place of safety suddenly runs into a street in front of or into the side of a moving car, so as to make it impossible for the operator of the car to prevent a collision by the exercise of the highest degree of care in the operation thereof, the driver should not be held liable even under the humanitarian doctrine. A finding, by a jury, of the facts as contained in the instruction mentioned, was equivalent to a finding that deceased's negligence was the sole cause of the collision.

In Missouri, under the humanitarian doctrine, a driver of a motorcar is required to exercise the highest degree of care in discovering a pedestrian in peril or danger. It is immaterial whether that peril was created by the negligence of the pedestrian. Contributory negligence passes out of the case when it is submitted solely under the humanitarian doctrine. [Silliman v. Munger Laundry

Co., 329 Mo. 235, 44 S. W. (2d) 159, l. c. 163 (3, 4) ; State ex rel. v. Haid, 333 Mo. 1224, 64 S. W. (2d) 667, l. c. 669 (6-8).] However, the question of whether the negligence of the injured party, where it is made an issue in the case, was the sole cause of the injury remains in the case. A defendant in such cases has the right to have that issue properly submitted to the jury.

The judgment is reversed and the cause remanded for new trial.

Divisional opinion adopted as the opinion of the Court en Banc. All concur, *Hays, J.*, concurring in result in separate opinion.

HAYS, J.—I concur in the first and second divisions of the divisional opinion and dissent to the third or last division which affirms the dissenting opinion of BLAIR, J., in the case of Causey v. Wittig, 321 Mo. 358, 11 S. W. (2d) 11 (a banc case), and overrules to a certain extent the majority opinion in the said case.

It is my purpose primarily to attempt to analyze and place what I think is the proper interpretation upon said majority opinion, and, secondarily, to make some observations concerning the form of the instruction which the divisional opinion suggests should be given in the retrial of the present case.

It is to be observed first that in the dissenting opinion of BLAIR, J., no authority is cited in support of the position taken therein and that the present divisional opinion finds no support in its citation for its criticism of said majority opinion. The first case which is cited is that of Parker v. St. Louis-San Francisco Railroad Co., 41 S. W. (2d) 386.

That was a specific negligence case. The defendant answered by general denial and ''charged contributory negligence only on the plaintiff's failure to exercise care in reaching a place of safety after the automobile stopped on the track.'' This court has many times held that such an allegation as that is a legal conclusion and does not, even if not attacked, constitute a charge of contributory negligence. The court there, after setting out defendant's testimony, given without objection, respecting plaintiff's conduct in the premises, held that defendant could have amended the answer to conform to the proof and that the court rightly treated the answer as though it had been amended, and held that the defendant's instruction hypothesizing such facts was within the issue made by both the evidence and the pleadings. In response to a contention that the instruction ''singled out and gave undue prominence to facts favorable to defendant and omitted other facts which were in dispute'' the court said: ''We find no material facts singled out and given undue prominence in the instruction, and we find no facts in dispute omitted from the instruction. Defendant was entitled to have any facts in evidence tending to sustain any defense made by it submitted to the jury. The fireman testified to the facts submitted by

the instruction. And (in the state of the pleadings) the court could not have submitted the ultimate facts without mentioning them in the instruction.'' The court expressly distinguished the case then at hand from Causey v. Wittig, supra, by saying: ''In that case the only issue submitted to the jury was the charge that defendant was negligent under the humanitarian doctrine.'' I concede that the general and well-established rule is, in effect, that each party to a cause at law has a right to instructions hypothesizing the facts which, if found by the jury to be true, would on the one hand sustain the cause or, on the other hand, sustain the defense. The dissenting opinion in the Causey case and the present divisional opinion alike invoke this general rule as their sole support. I think they misapply the rule. Difficulty in the application of this general rule may arise out of a misapplication of it made either through oversight or through disregard of its established limitations. This is due perhaps to failure to distinguish between the different classes of facts and the sufficiency thereof in a given situation presenting its own particular record and governed thereby. Misapplications similar to those just referred to have been pointed out and disapproved in a number of decisions of this court, some of which will presently be examined. The classes of facts referred to above are evidential or subordinate facts in the one class, and ultimate or essential facts in the other. In the Parker case, supra, the evidential facts were the only facts supporting the defense made and were sufficient to fully establish it. In the Causey case, a humanitarian doctrine case, the evidential facts submitted in the instruction there under review were not, as seems manifest, the full and complete equivalent of the attendant ultimate facts inherently involved in the situation and, were in part essentially determinative thereof. The defendant was, of course, entitled to an instruction the converse of plaintiff's basic instruction, but not to one which was not *elementally and clearly* a complete converse thereof, if the plaintiff's was correct. So that it is obvious that the opinion in the Parker case is not in principle in conflict with the majority opinion in the Causey case but is in complete harmony therewith.

The present divisional opinion states that said majority opinion in the Causey case ''was erroneous because it did not require the jury to find that such a fact, that is deceased walking into the side of the car, was the sole cause of the injury, and also because it singled out and gave undue prominence to certain facts favorable to defendant.'' The statements made in said majority opinion must be read and interpreted in the light of all the record to which they are applied and in connection with the context. Let us go to the context of the majority opinion in the Causey case, and first to the instruction. I quote:

'' 'The court instructs the jury that if you find and believe from

the evidence that while defendant was operating his automobile north on Tower Grove Avenue, the deceased, Charles Causey, *suddenly ran across the street in front of a moving street car and toward the left rear side of defendant's automobile and in so close proximity thereto as to make it impossible for the defendant to prevent his automobile from colliding with the said deceased by the exercise of the highest degree of care in the operation thereof,* then your verdict must be in favor of the defendant.' (Italics ours.)

"On the face of this instruction, it is not clear whether it was intended to predicate a verdict for the defendant on the negligence of deceased as a *contributing* cause of the collision or as the *sole cause* of the collision. . . . We will now consider the instruction from both viewpoints. If it submitted the issue of contributory negligence, it was clearly erroneous, because that issue was not involved after plaintiff submitted her case on the humanitarian doctrine only, and because, of course, the contributory negligence of deceased did not relieve the defendant of liability under the doctrine. If it submitted the issue of deceased's negligence as the sole cause of the collision, it was erroneous, because it did not require the jury to find that the negligent acts of deceased, mentioned in the instruction were the *sole cause* of the collision and his resulting injuries and death. In failing to require the jury to so find, the instruction ignored the issue of concurrent negligence or the question of whether or not the collision was caused by the concurring negligence of defendant and deceased. In other words, it did not require the jury to find whether or not the *defendant saw, or* by exercising the highest degree of care, *could have seen, the perilous situation of deceased, while crossing the street,* in time, by exercising the highest degree of care, to have prevented the collision, by stopping his automobile, or by reducing the speed thereof and warning the deceased of its approach, or by turning his automobile aside. Plaintiff's main instruction (No. 1) properly predicated her recovery on an affirmative finding as to one or more of these omissions or acts of negligence on the part of defendant, and it follows, therefore, that defendant could not escape liability without a negative finding as to all of such omissions or acts of negligence on his part. In any view that may be taken of this instruction, it must be conceded that it did not make it clear to the jury whether the defendant was required to do anything to prevent the collision until the deceased was in 'close proximity' to his automobile. So, to say the least, the instruction was confusing and misleading in this particular. And, in its present form, it is subject to the further criticism that it *singled out* and *gave undue prominence* to certain *facts favorable to defendant,* and *omitted* certain other *material facts* which were *in dispute.* Viewed in this light, it furnished the jury with an argument on defendant's side of the case rather than enlightenment as to the rule of law applicable to

the issues of fact. It was, for these reasons, highly prejudicial to the plaintiff, and therefore, must be held to be reversible error."

It seems too plain for argument that the instruction did single out and give undue prominence to the facts hypothesized as being sufficient upon which to determine the blame for the collision. The facts therein hypothesized were together not determinative of all the material facts attendant upon the collision and those facts leading up to it. Yet the instruction implied that they were determinative. In another view, the instruction failed to make it clear to the jury whether defendant was required to do anything to prevent the collision until the deceased had reached a degree of proximity to the automobile that rendered preventive action on the part of defendant impossible. It reduces the danger zone and defendant's duty with respect thereto to a common vanishing point. Said instruction was, therefore, as stated in said opinion, at least "confusing and misleading." It seems to be entirely clear that the statement made in the majority opinion in the Causey case, touching "other material facts which were in dispute" referred to facts involved in the entire situation (and set out in said majority opinion) which were essentially determinative of negligence *vel non* and liability of the defendant under the humanitarian rule, and as such were hypothesized in plaintiff's basic instruction. Not all of which determinative facts, it was in effect stated in the Causey majority opinion, were hypothesized in defendant's instruction in a manner clear to the understanding of a jury of laymen; that rather they seemed to be withdrawn from the jury's consideration by defendant's said instruction which in terms made no reference to them, but apparently ignored them altogether. They were the approach of the pedestrian and the driver's duty in that respect. From the context it seems to me that by the expression "facts favorable to defendant" it was not meant to characterize the facts themselves as inherently favorable to the defendant but favorable only from the undue prominence and emphasis given them. That was the circumstance "suddenly ran across the street, etc." Thus they were, in my estimation, calculated to imply fault on the part of the plaintiff in respect of his very manner of approach, from start to finish; and their misleading tendency was obviously susceptible of effective use in argument addressed to the jury. Some of the observations to be made in a later connection will be applicable to this connection also.

The divisional opinion in the case at bar contains the assertion that in the case of Smith v. Wells, 326 Mo. 525, 31 S. W. (2d) 1014, l. c. 1020, 1021 (1, 2), "an instruction in substance and effect the same as the instruction in the Causey case was considered at length and approved. The Causey case was not mentioned." A casual glance at the Smith-Wells case will disclose that there is no

likeness between that case, on the one hand, and the Causey case and the case at bar on the other hand. No wonder the Causey case was not mentioned. In the Smith-Wells case the defendant's Instruction No. 4 was, in respect of the determinative facts, a complete converse of plaintiff's instruction which upon an affirmative finding of the matters hypothesized authorized a recovery under the humanitarian rule. It contained essential matter such as was omitted from the instructions in both the Causey case and the instant case. It told the jury that "if from a position of safety, the driver of the automobile drove upon the street car track immediately in front of or in close proximity to an approaching street car thereon *at a time when the motorman* operating the street car *could not* with the means at hand . . . *avoid a collision with the automobile after he saw,*" actually or constructively *that the automobile was going to enter a position of danger,* then "the verdict should be for defendant." (Italics ours.)

The Smith-Wells case points out the contrast between said instruction and an instruction condemned in the case of Shumate v. Wells, 320 Mo. 536, l. c. 543, 9 S. W. (2d) 632, which, as it happens, was almost a counterpart of defendant's instruction in the Causey case and authorized a verdict for defendant upon a finding that if "the automobile . . . was driven directly in front of or *in such close and dangerous proximity* to the approaching" street car that the motorman could not, with due care, with the means at hand have stopped the car in time to have avoided the collision. The instruction was condemned because *the motorman was not required to make any effort to stop his car* or check its speed *until the automobile was driven directly in front of or in close proximity to it, whereas it was his duty to act as soon as it became apparent, from the movements of the automobile, that the driver intended to cross ahead of the car.*

Some of the supporting authorities cited in the majority opinion in the Causey case will now be examined. In Turnbow v. Dunham, 272 Mo. 53, 197 S. W. 103, defendant's instruction, in effect told the jury that before they could find for the plaintiff they must find that defendant's motorman was guilty of negligence in not taking such precautions as a reasonably prudent person would have done under the same circumstances, to avoid injuring the plaintiff, *"after the motorman saw him in a position of danger from being run over by the rear wheels of the car, etc."* The court *inter alia* (l. c. 64) said: *"The motorman could have seen the child approach the track and come within danger of the rear wheels had he been looking out at the child.* Did ordinary care, under the circumstances, require him to look and see?" The court held it did, and held the instruction to be erroneous in omitting this important fact.

Hornbuckle v. McCarty, 295 Mo. 162, 243 S. W. 327, in the factual

situation involved, is in most respects strikingly similar to the case now at hand. The court therein (1. c. 173) observed that had the driver of the motor truck discharged the duty resting upon him to look both laterally and straight ahead he would have discovered that a collision between the truck and the pedestrian was imminent, before the front of his machine passed the line of the latter's progress—that it was highly probable that the truck would run against the pedestrian, or the pedestrian unwittingly against the truck; that at least there was evidence tending to show such facts; and that the defendant's instruction ignored this essential phase of the case, and was therefore properly refused.

Other Missouri cases cited are Stewart v. Ry. Co., 188 S. W. 198, 199, 200; Nabe v. Schnellman (Mo. App.), 254 S. W. 731, 734; Saulan v. Ry. Co. (Mo. App.), 199 S. W. 714, 715. See, also, Burke v. Pappas, 316 Mo. 1235, 293 S. W. 142, involving a collision between a pedestrian and an automobile, in which the court enunciated the same principle that was applied in the Causey case and certain other cases reviewed above. So also did Martin v. Fehse (Div. One), 331 Mo. 1. c. 867, 55 S. W. (2d) 440, citing the Causey case among others of those reviewed above. The principles stated and applied in the majority opinion in the Causey case were later applied in Silliman v. Munger Laundry Co. (Div. Two), 329 Mo. 235, 244-245, 44 S. W. (2d) 159, citing the former and citing also Schulz v. Smercina, 318 Mo. 486, 1 S. W. (2d) 113; Burke v. Pappas, and Shumate v. Wells, supra, and Althage v. People's Motorbus Co., 320 Mo. 598, 8 S. W. (2d) 924, 1. c. 927.

Thus it is seen that this series of decisions has painstakingly worked out and formulated this well-considered and distinctive body of law and established same as a safe and sound guide peculiarly adapted to Missouri's unique humanitarian doctrine and its practical and sound administration. I am impressed with the worth of these precedents and as a present co-administrator of this doctrine in this court I am unwilling to give my concurrence in what I deem to be its despoilation. Instructions of the general type of those discussed seem, from their frequent appearance in records brought to this court, designedly framed to accomplish indirectly that which cannot be directly accomplished; and they will, if approved by this court, emasculate the humanitarian rule, and I venture the prediction if part three of the present divisional opinion be adopted it will mean, as ere long will appear, the opening of Pandora's box.

Coming now to the record in the instant case, it seems advisable to expand slightly the outline given of it in the divisional opinion. The collision in question here occurred at, but not within, the street intersection proper formed by Grand Avenue, running north and south, and St. Louis Avenue, running east and west. The plaintiff's decedent, having walked along the sidewalk on the north side of the

intersection from the northeast corner to the east curb line of Grand Avenue, proceeded to cross Grand in the crosswalk space in a line coincidental with said sidewalk. He walked very slowly, kind of bent down, and looked like an old man with his head looking to the ground, and kept on walking very slowly toward the west side of Grand Avenue until he reached the point of collision of himself and defendant Waldbauer's automobile. Waldbauer reached that point in driving his said car from the north alongside the track for cars southbound on Grand. The point of collision was in the crosswalk mentioned and close to the west rail of said street car track. To that point Waldbauer had driven his automobile in a straight and uninterrupted course close to said west rail. The street intersection was fairly well lighted. Waldbauer was able to see the traffic signal for southbound traffic half a black distant therefrom, and the car's headlights made objects visible a distance of fifty to sixty feet ahead, which was the width of St. Louis Avenue. Going at a speed of twenty or twenty-five miles an hour he could have stopped his car in ten feet. There was no eastbound traffic, and no southbound traffic ahead of him. The weather was clear and dry; the street paved and smooth and Waldbauer was familiar with the locality. During the decedent's continuous progress in his attempt to cross the street the traffic signal changed to "Go" for southbound traffic. The body of the deceased was dragged some forty feet by the impact of the subsequent collision and deposited about the center of St. Louis Avenue. The left front headlight of the car was bent back or turned. This change in the signal to "Go" occurred when Waldbauer was a short block from the crosswalk referred to and he was driving at a speed of twenty to twenty-five miles an hour, and he so proceeded to the point of collision. His counsel in argument to the jury, made and answered queries thus: "Is there any evidence in the case that shows that Mr. Waldbauer ever saw this man in a position of imminent peril when he knew he himself had the right of way? I say, gentlemen, there is not, and this whole case is left to mere conjecture on the part of the plaintiff, and they are trying to charge this man with such negligence that he killed a man. . . . What is the evidence about this portion of that instruction which says that William Waldbauer caused that machine to *strike* Borgstede? I say there is a total failure of proof." This constituted an important concession. Waldbauer, sworn as a witness for plaintiff, said he never at any time saw Borgstede as he (Waldbauer) approached the place of the occurrence; that the first time he saw him was "when he fell on my hood" and passed by the car on the left-hand side; that the headlight was bent by Borgstede catching it with his left hand when falling on the hood. There was a dent or so made on the cowl or fender by Borgstede's body. There was testimony from one eyewitness that the deceased was struck by or at the front of the car. Another eye-

witness, who from time to time observed Borgstede in his progress over the crosswalk, testified he, did not actually see the collision but that his attention was drawn to it by his hearing the impact. It seems that the deposition of this witness was taken shortly after the casualty. In his cross-examination at the trial he admitted that in his deposition he had deposed that he thought Borgstede walked into the side of the car. This was plaintiff's case and defendant's demurrer thereto was denied. The defendant offered no evidence and rested on plaintiff's. The case was submitted under the humanitarian doctrine.

From the record it is plain to be seen that, although plaintiff recovered a verdict, defendant's refused instruction would in a close case have been a serious handicap to a recovery. The instruction as framed was subject to the same criticism as that leveled in the Causey case and that expressed in this opinion. Even if it should be amended in the form suggested in the divisional opinion in this case I think it better not be given on a retrial of the case. The argument made to the jury, in part shown above, serves to show how purely subordinate bits of evidentiary facts may be made pivotal in importance by over-emphasis and by quibbling over them—when of no more real importance than the difference between tweedlee and tweedledum—to the omission or exclusion of essential issues. This casualty was a collision—nothing less—made up of contributing subordinate factors operating to one end. The word denotes the ultimate fact of which the evidentiary facts are component, such as the manner of the mutual and concurring contacts between the car and the man, and the attendant and immediately precedent circumstances, and is expressive of the mutual forcible meeting of two bodies moving along separate lines leading them to a common point of contact with each other. Ultimate facts are required to be pleaded. When that rule is observed the instruction may and, as experience has proven, should follow the same course. In such case the hypothesizing of an evidential fact, as in the present case and the Causey case, not only presents the faults we have earlier discussed but also carries an implication of fault or blame. Such expressions as "walked into the side of the automobile" do carry that implication and are usually designed to do so. For example: The morning paper carries as a headline, "Automobile Crashes Into Train!" What is the inference instantly drawn by the reader? Blame-worthy fault on the part of the driver of the automobile. This is a sweeping statement of the sum and substance of the collision. But does it give any intimation of the essential facts of the casualty as dependent upon by their evidentiary coloring? To ask is to answer the question.