LEO DILALLO, Appellant, v. JAMES A. LYNCH and GENEVIEVE LYNCH. —101 S. W. (2d) 7.

Division One, December 14, 1936.

*Boyle & Priest* and *S. P. McChesney* for appellant.

*Ernest E. Baker* for respondents.

BRADLEY, C.—Action to recover $10,817 for personal injury to plaintiff, loss of services, society and companionship of his wife, injured in same accident, and for special damages for medical and nursing attention to the wife and damages to the car owned and driven at the time by plaintiff. Verdict and judgment went for defendants and motion .for new trial being overruled, plaintiff appealed.

The collision, between the automobiles, from which this cause arose, occurred on Tower Grove Avenue, St. Louis, January 13, 1929. Plaintiff alleged six grounds of negligence, but went to the jury on but three of these, viz.: (1) Excessive speed; (2) that defendants were negligent in attempting to pass another car going in the same direction and in so attempting, ran their car over and upon the wrong side of the street into collision with plaintiff's car; and (3) the humanitarian

rule. The answer is a general denial, contributory negligence and a plea as follows: "That plaintiff saw, or by the exercise of the highest degree of care on his part could have seen, the southbound automobile being driven by defendant, James A. Lynch, in a position of imminent peril and danger of being collided with by plaintiff's automobiles being operated north on Tower Grove Avenue by plaintiff, in time thereafter, by the exercise of the highest degree of care on plaintiff's part and with the means at hand and with reasonable safety to plaintiff's automobile and the persons therein, to have stopped his said automobile, turned the same aside or sounded his horn or signaling device on plaintiff's said automobile and thus and thereby have avoided colliding with said southbound automobile, but that plaintiff negligently and carelessly failed to do so." The reply is a general denial.

█ Plaintiff, appellant here, assigns error only on defendants' Instruction No. 5, which follows: "The court instructs the jury that if you find and believe from the evidence that plaintiff was operating his automobile north on Tower Grove Avenue on the occasion mentioned in evidence and that said automobile collided with an automobile traveling south on Tower Grove Avenue and that prior to the time said automobiles collided, said southbound automobile was and became in a position of imminent peril and danger of being collided with and that plaintiff saw, or by the exercise of the highest degree of care on his part, could have seen said southbound automobile in such position of imminent peril and danger of being collided with in time thereafter, by the exercise of the highest degree of care on plaintiff's part and with the means and appliances at hand and with reasonable safety to plaintiff and his said automobile and the person therein, if you so find, to have turned his said automobile. if you find he could, and that plaintiff could thereby have avoided said collision, if you so find, and that plaintiff failed to turn his said automobile aside, if you find he did fail, and that such failure on plaintiff's part was negligent and that as a direct and proximate result of plaintiff's failure to so turn his automobile aside, said automobiles were caused to collide, then the court instructs you that plaintiff is not entitled to recover against defendants."

Plaintiff's Instruction No. 1 submitted primary negligence, and his Instruction No. 4 submitted the case under the humanitarian rule. Defendants say that there was no available evidence to support plaintiff's humanitarian instruction and that, for such reason. it should not have been given, and that he cannot, therefore, complain about their Instruction No. 5. Defendants requested and were given an instruction specifically on contributory negligence, and plaintiff makes no complaint on this instruction.

Three questions arise on this record, viz.: (1) Was there substantial evidence to support plaintiff's Instruction No. 4 submitting

the cause under the humanitarian rule? and (2) if so, was defendant's Instruction No. 5 proper? and (3), can plaintiff, under the facts, recover against defendant, Mary Genevieve Lynch, under any theory? We rule the questions in the order stated.

I. Hereinafter, where we use the term defendant, we have reference to defendant, James A. Lynch, unless it otherwise appears. Plaintiff testified that about eight P. M., January 13th, with his wife and son, he was returning to his home from a visit to a friend; that between Folsom and Vandeventer avenues (east and west streets), he was driving north, on a slight upgrade, on Tower Grove Avenue, about three feet from the east curb; that snow and sleet were on the street; that about the middle of the block, a yellow cab was standing at a call box; that he was pulling out (to the left) to pass this cab, "when all at once I saw Mr. Lynch coming south from behind another automobile proceeding in the · same direction;" that defendant "came right over on my side of the street and when he saw he was going to hit me he swung away and started to skid and skidded right on into me. He missed hitting me headon and hit me with the side of the car, kind of sideswiped me. I was driving 20 miles per hour. . . . The hind end of his car sideswiped my car;" that he first saw defendant's car when his (defendant's) lights "came from behind the other car. I estimate that when I first saw him coming from behind the other car over on my side of the road, I was about 20 or 25 feet away." And, as appears in an additional abstract, plaintiff testified that defendant's car was traveling better than forty "miles per hour." Plaintiff further testified that these cars (defendant's and the one he passed around) "were running in about the middle of the street;" that defendant pulled out "from behind this other automobile into my track and I couldn't get out of the way. . . . As soon as I saw him I put the brakes on and when the collision occurred I was standing still."

Fred Kracht, a witness for plaintiff, testified that he was sitting in his cab (the yellow cab mentioned by plaintiff) when he noticed two cars "coming south;" that "one was about fifteen feet behind the other. The one in front was a coupe or roadster, and the one behind it was a big car, a sedan. The big car was kind of zigzagging and as it got a little past me it swung around this other car. This car (plaintiff's) coming north was about forty feet down the street and as Mr. Lynch swung, his car skidded around and the back end hit Mr. Dilallo's car and it went across the street. I saw Dilallo's car before the collision because I was watching this car zigzag and turned to watch it. Mr. Dilallo's car was close to the curb on the east side. The collision took place ·on the east side of the street. When this big car swung around the coupe, it started skidding and hit this other car and finally wound up going across the street. I estimate the speed of the big car to be about twenty-five or thirty

miles an hour. The other car, I believe, was going about twenty miles an hour. . . . From where I was sitting it looked like the back fender of this big car hit the front fender of the little car.''

Plaintiff introduced a deposition of defendant, wherein he testified that he was driving south midway between Folsom and Vandeventer; that he saw plaintiff's car before the collision; that when he first saw plaintiff's car he (defendant) was "possibly fifty feet" from it; that ice and snow were on the street; that he was traveling downgrade (2 or 3%) at eight or ten miles per hour; that the lights on his car and on plaintiff's car were burning; that he did not skid; made no attempt to stop, but when he got in about twenty feet of plaintiff's car he "tried to pull over to the right;" that he, under the conditions and with safety to his passengers and himself, could have stopped his car in twenty feet.

The above contains all the evidence, offered by plaintiff, that is pertinent to the question of whether there was any evidence to support submission of his case under the humanitarian rule.

Defendant, as a witness for himself and codefendant, testified that the collision occurred about 150 feet south of Vandeventer; that he was driving in the southbound track (vehicle track in snow); that this track was midway between the center of the outer track (west vehicle track) and the outside rail of the southbound street car track; that his car was struck by plaintiff's about the center of the left front door; that he could see the lights on plaintiff's car; that plaintiff was working in "on an angle a little northwest;" that he (defendant) was going eight or ten miles per hour; that he saw no car (traveling in same direction) in front of him and did not pass any; that plaintiff's car was west of the center of the street and did not change its course before the collision. "After I saw him angling toward me I did not see him turn either way. I figured he was coming right in my direction and there was only one thing to do, and that was to pull to the right and try to avoid an accident, which I did." On cross-examination defendant said that he was "straddling the west rail" of the southbound street car track; that it was twenty feet from him to the west curb; that at no time did he skid; that there was nothing in the worn track just west, "and I could have turned into this track, but didn't think it was necessary. I was on my side of the street. I saw him coming at an angle, but made no effort to turn or swerve my automobile to the track that was west of me and nearer the curb until he was right on me. Well, I wouldn't say right on me, but possibly fifty or seventy-five feet away.''

Plaintiff's humanitarian instruction was on the theory that defendant saw, or by the exercise of the highest degree of care could have seen plaintiff's automobile approaching from the south, and in imminent peril, in time thereafter, by the exercise of the highest degree of care, to have stopped or to have so slackened the speed or

to have turned aside "and thereby have avoided striking and colliding with the plaintiff and his automobile."

Under the facts, plaintiff was not in a position of imminent peril until defendant's car turned to the left to pass around the car in front of him. [Phillips v. Henson, 326 Mo. 282, 30 S. W. (2d) 1065; McCoy v. Home Oil & Gas Co. (Mo. App.), 60 S. W. (2d) 715.] Such being so the application of the humanitarian rule to plaintiff's case will depend upon the situation created by defendant turning out to his left to pass the car in front of him. And in determining whether the facts justified submission of the cause on the humanitarian rule, we view the facts of plaintiff's case the same favorable way as we would on a demurrer to the evidence. Defendants filed a demurrer at the close of plaintiff's case, but when overruled, did not stand thereon, but again, without successs, filed demurrer at the close of the whole case. In this situation, plaintiff was entitled to the most favorable evidence rule, but this rule has an exception in cases where the favorable evidence invoked, even from a plaintiff's own case, runs counter and is contradictory to some other theory of recovery relied upon by plaintiff. [State ex rel. Tunget v. Shain et al., 340 Mo. 434, 101 S. W. (2d) 1.] And this rule has an exception where the evidence sought to be invoked from the defendant's case is contrary to the plaintiff's evidence and his theory of recovery. [Elkin v. St. Louis Public Service Co., 335 Mo. 951, 74 S. W. (2d) 600, l. c. 604, and cases there cited.] We stated, supra, that plaintiff went to the jury on the charge of excessive speed. To permit him to also go to the jury, under the humanitarian rule, on the theory that defendant's car was running eight or ten miles an hour, even though appearing from plaintiff's case in the deposition of defendant, would be in contradiction of plaintiff's theory of excessive speed. He could not recover on his excessive speed charge of negligence and also recover under the humanitarian rule on the theory that defendant's car was traveling eight or ten miles an hour, and therefore could have been stopped or slowed down in time, etc. The two theories are contradictory and irreconcilable, and a cause cannot be properly submitted on inconsistent theories. [State ex rel. Tunget v. Shain et al., supra.]

Plaintiff, as stated, testified that defendant's car, when it came from behind the one in front, was twenty or twenty-five feet away. Defendant, in his deposition introduced by plaintiff, testified that he was "possibly fifty feet" away from plaintiff's car when he first saw it, and that under the conditions obtaining, he with safety to his passengers and himself, could have stopped in twenty feet. And in his own case defendant testified that he was possibly fifty or seventy-five feet away, but made no estimate as to stopping distance. But plaintiff, on his humanitarian theory, cannot invoke the evidence from the deposition that defendant could have stopped his car in

twenty feet, because the evidence as to *stopping* is based on a *speed* of eight or ten miles per hour, which evidence as to speed plaintiff cannot invoke for the reason given above. It appears that plaintiff's car was *stopped* when the collision occurred, and it will be noted that defendant did not try to swerve to his right, not because he did not have time, but because he did not think it was necessary. In the absence of any available evidence as to speed and stopping distance of defendant's car on plaintiff's humanitarian case, we are clear that there was no substantial evidence to submit plaintiff's case under that rule on the theory that defendant could have stopped in time or slowed down sufficiently to avert the collision. ■ However, we are of the opinion that there is substantial evidence tending to show that defendant, by the exercise of the highest degree of care, could have swerved his car to the right and averted the collision. We reach this conclusion from the evidence of defendant that he could have swerved to his right and averted the collision, had he thought such was necessary. We hold, therefore, that plaintiff had substantial evidence to support submission of his cause under the humanitarian rule on the theory that defendant, by the exercise of the highest degree of care, could have swerved to his right and averted the collision.

■ II. Was defendant's Instruction No. 5 erroneous? Plaintiff's Instruction No. 4, submitting the cause under the humanitarian rule, submitted, in the alternative, the three theories, stopping, slowing down or swerving, and we have ruled that there was not sufficient evidence to support the theory of stopping or slowing down, hence there was no substantial evidence to support the instruction on the three theories in the alternative. The conclusion, however, that there was no substantial evidence to support plaintiff's Instruction No. 4 on the theory of stopping or slowing down, should not work affirmance of the judgment for defendant, if defendant's Instruction No. 5 is erroneous. The rule is that where a plaintiff submits his case solely on the humanitarian doctrine, contributory negligence cannot be interposed as a defense to recovery under that doctrine, and any instruction which permits contributory negligence to defeat recovery under that doctrine is erroneous. [Doherty v. St. Louis Butter Co., 339 Mo. 996, 98 S. W. (2d) 742; Borgstede v. Waldbauer (en banc), 337 Mo. 1205, 88 S. W. (2d) 373, 1. c. 378; Silliman v. Munger Laundry Co., 329 Mo. 235, 44 S. W. (2d) 159; State ex rel. Berberich v. Haid, 333 Mo. 1224, 64 S. W. (2d) 667; Francis v. Mo. Pac. Transportation Co. (Mo. App.), 85 S. W. (2d) 915, 1. c. 918; Millhouser v. Kansas City Public Service Co., 331 Mo. 933, 55 S. W. (2d) 673; Larey v. M. K. & T. Ry. Co., 333 Mo. 949, 64 S. W. (2d) 681.]

■ Defendant's Instruction No. 5 is set out above, but for convenience, we here set out its substance. This instruction directed the

jury to find for defendants if it was found: (1) That plaintiff was operating his car north on Tower Grove Avenue; (2) that his car collided with defendant's car; (3) that prior to the collision defendant's car became in a position of imminent peril and danger of being collided with; (4) that plaintiff saw or by the exercise of the highest degree of care could have seen defendant's car in such position of peril and danger of being collided with in time thereafter, by the exercise of the highest degree of care and with the means and appliances at hand and with reasonable safety, etc., to have turned his car aside and thereby have avoided the collision; (5) that plaintiff failed to turn his car aside; (6) and that such failure was negligent; and (7) that "as a direct and proximate result of plaintiff's failure to so turn his car aside" said cars were caused to collide. It will be observed that this instruction directed (if the predicated facts were found) a finding against plaintiff regardless of the fact that the case was submitted both on the humanitarian rule and on primary negligence.

The Doherty case, supra, was submitted solely on the humanitarian rule. The verdict and judgment below were for the defendant and plaintiff appealed, complaining, among other things, of instructions for defendant. Among the instructions challenged was Instruction 7 as follows: "The court instructs the jury that if you believe and find from the evidence that on the occasion mentioned in the evidence plaintiff walked or ran against the side of the truck mentioned in the evidence near the left rear fender thereof, and if you further believe and find from the evidence that plaintiff's act in so walking or running against the side of the said truck, if you so find, was the sole cause of whatever injuries, if any, plaintiff sustained on said occasion, and was not due to any negligence on the part of the operator of the truck mentioned in the evidence in any particulars set out in other instructions herein, then and in that case plaintiff is not entitled to recover and you will find your verdict for the defendant."

In the Millhouser case, supra, it is stated (331 Mo. 933, 55 S. W. (2d) .l. c. 676) that "the only defense in a case properly submitted on the humanitarian rule is to disprove one or more of the basic facts on which that rule rests." In the Doherty case, in the consideration of the instruction above set out from that case, the court quoted the above excerpt from the Millhouser case relative to the only defense in a case under the humanitarian rule, and made the observation that such statement was rather broad and then said: "Certainly, if the acts and conduct of a plaintiff were the sole cause of his injuries and the defendant was not negligent, then a verdict for the defendant is authorized. Should a defendant, under the humanitarian rule, be restricted to disprove one or more of the facts upon which that rule rests? Or may he affirmatively show a state of facts which, if true, would place the entire blame for the injury upon the plaintiff, and *by*

*an appropriate instruction submit that question to the jury?* (The court's italics.) We think the latter rule correct, otherwise the lawsuit would be similar to compelling a man to enter a boxing contest and by the rules restrict him to dodging the other fellows blows. By Instruction 7 the defendant merely presented for consideration of the jury the facts relied upon for its defense. If the facts were as presented by the defendant, plaintiff was not entitled to recover under the humanitarian doctrine. The plaintiff in this case, as is generally done, enumerated in his main instruction the facts upon which he sought a favorable verdict. Must a defendant content himself by merely submitting negative instructions such as instructions number 4 and 5? We think not.''

The instruction in the Doherty case was approved, but the instruction in that case required a finding that plaintiff's negligence, if any, was the *sole* cause of the injuries sustained, ''and was not due to any negligence on the part of the operator of the truck mentioned in the evidence in any particulars set out in other instructions therein'', while in the present case, defendant's Instruction No. 5 told the jury, among other things, that plaintiff could not recover if it were found that his failure to turn his car aside ''was the direct and proximate'' cause of the collision.

In the Borgstede case, supra, the verdict was for plaintiff and defendants appealed. Among the assignments was the refusal of this instruction: ''The court instructs the jury that if you find and believe from the evidence in this case that the defendant William Waldbauer was at all the times mentioned in the evidence exercising the highest degree of care in the operation ·of said automobile, that is, such care as a very careful and prudent person would exercise under the same or similar circumstances, and that while said automobile was being so operated by said William Waldbauer the deceased walked into the side of said automobile, and that the said William Waldbauer did not know, *or* (italics ours) by the exercise of the highest degree of care could not have known, that deceased was about to walk into the side of said automobile, if you so find, or was in a position of imminent peril, in time thereafter, by the exercise of the highest degree of care, to have stopped, slackened the speed, swerved said automobile, or given warning of the approach so as to have prevented said injury, then the defendant William Waldbauer was not guilty of negligence and your verdict must be for the defendant.'' It was held that the instruction would have been proper had the word *and* been used instead of the italicized *or*. In that case the court said: ''In Missouri, under the humanitarian doctrine, a driver of a motorcar is required to exercise the highest degree of care in discovering a pedestrian in peril or danger. It is immaterial whether that peril was created by the negligence of the pedestrian. Contributory negligence passes out of the case when it is submitted solely under the

humanitarian doctrine. [Citing Silliman v. Munger Laundry Company, and State ex rel. v. Haid, supra.] However, the question of whether the negligence of the injured party, where it is made an issue in the case, was the sole cause of the injury remains in the case. A defendant in such cases has the right to have that issue properly submitted to the jury." It will be noted that the instruction in the Borgstede case did not contain a specific direction (1) that contributory negligence could not defeat recovery, or (2) specifically require a finding that the predicated facts as to the negligence of the deceased was the *sole* cause of the injury, or (3) a specific finding that defendant was not negligent as set out in the plaintiff's humanitarian instruction. The second and third of these omissions from the instruction in the Borgstede case are specifically covered by the instruction in the Doherty case, and we think the Doherty case instruction would be less likely to confuse if it contained a further direction that contributory negligence could not defeat recovery.

The instructions in the Borgstede case and the Doherty case are not exactly humanitarian defense instructions and are, therefore, different in some respects to defendants' Instruction No. 5 in the present case. Although repetitious, we again refer to the closing language of defendants' Instruction No. 5. This instruction ended with the direction that if "plaintiff failed to turn his said automobile aside, if you find he did fail, and that such failure on plaintiff's part was negligence and that *as a direct and proximate* result (italics ours) of plaintiff's failure to so turn his automobile aside, said automobile were caused to collide, then the court instructs you that plaintiff is not entitled to recover against defendants." We do not deem it necessary to enter upon a discussion of "direct cause," "proximate cause" and "direct and proximate cause." Efforts at defining these expressions are numerous. Instruction No. 5, as it affects plaintiff's humanitarian theory, is extremely and highly confusing to say the least, and to the layman, could easily mean that plaintiff's negligence; whether the sole cause or not, would bar his recovery under the humanitarian rule. And so construing the instruction it conflicts with plaintiff's Instruction No. 4 (plaintiff's humanitarian instruction), which told the jury that if the facts therein predicated were found, then the verdict would be for plaintiff, "even though you should find that the plaintiff himself was guilty of negligence contributing to said collision. . . ." If a humanitarian defense instruction is to have recognition in the practice, then when a cause is submitted under primary negligence and the humanitarian rule, such instruction should, in order to avoid confusion and conflict, contain the *sole* cause provision and what we may term a *not due* to the negligence of the defendant provision as in the Doherty case, and also a plain direction that contributory negligence is not to be considered in determining recovery under the humanitarian rule. In cases where

a guest sues to recover for injuries sustained in a collision of automobiles and where defendant makes the defense that the cause of the collision was due *solely* to the negligence of a third party, the *sole cause* instruction of the defendant must "clearly advise the jury that the negligence, if any, of the third party cannot be imputed to the plaintiff." [Watts v. Moussette, 337 Mo. 533, 85 S. W. (2d) 487, l. c. 492.] It is our conclusion that defendant's Instruction No. 5 is erroneous, which defendant, in effect, concedes, if plaintiff was entitled to have his case submitted under the humanitarian rule, and we have ruled that he had such right.

III. Can plaintiff, under the facts, recover against defendant, Mary Genevieve Lynch, under any theory presented? Defendants are husband and wife, but were not such at the time of the collision giving rise to this cause. Prior to her marriage, Mrs. Lynch was a Miss Luepke. She had a young brother, John, fourteen years old, who attended school in St. Louis County, but came home week ends. It was Sunday night, weather bad, four or five degrees above zero, and Mr. Lynch was at the Luepke home. John wanted to go to his school that night and asked his sister, now Mrs. Lynch, to drive him, but she refused because of the weather and road conditions. John then asked his older brother (age not given), and he refused. John could have gone to his school on the street car, but he would have had to walk some distance after he left the street car, "and it was a cold night." Mr. Lynch volunteered to make the drive and, using the Luepke family car, he made the drive and Miss Luepke went along, and the collision occurred on the return trip. Mr. Luepke, the father, was not at home and knew nothing about the use of the car at the time. It is urged that under these facts the peremptory direction to find for Mrs. Lynch should have been given. Plaintiff seeks to fasten liability upon Mrs. Lynch on the theory that the facts relative to taking her brother to his school made Mr. Lynch her agent for the purpose of this trip. As stated, Mr. Lynch volunteered to make this drive. He did not make the drive *for* Mrs. Lynch, hence there could be no agency. True, she was interested, because it was her brother who wanted to be driven to his school, but the interest of the sister in her brother getting safely to his school would not under the facts here create the relation of agency between Mr. and Mrs. Lynch.

Neither was the trip a joint enterprise. In Keim v. Blackburn et al. (Mo.), 280 S. W. 1046, the facts were about these: Plaintiff was injured by a car owned by George W. Blackburn, and driven at the time, "so far as can be determined" by one Roach. Mary Blackburn, daughter of G. W., was along in the car. G. W., Mary and Roach were named as defendants. At the close of plaintiff's evidence, the court directed a verdict for the father and daughter. An involuntary non-suit with leave, etc., was taken as to the father and daughter. Motion to set aside the nonsuit was overruled and the plaintiff appealed.

Roach was a guest at the time at the Blackburn home and took the car out, whether for pleasure or business was not shown, "and Mary Blackburn accompanied him." There was no evidence that the father, G. W., had any knowledge of the use of the car, and there was nothing to show that Mary, in any way, attempted to direct Roach's course "or to supervise his operation of the car." Then says the court, that although Mary "may have been her father's chauffeur and accustomed as such to use the car and was at the time riding in it, these facts, as stated, will not authorize the submission of her liability to the jury in the absence of any proof that she was a party to the taking and using of the car in her father's behalf or that she in any manner or at any time during that trip directed or attempted in that behalf to control its use or operation." The action of the trial court in refusing to set aside the nonsuit was affirmed. The only difference between the Keim case and the present case, so far as concerns the liability of the daughter, is that in the Keim case the purpose of the trip was not disclosed, while in the present case the purpose was to take the young brother of Mrs. Lynch to his school. There is nothing here to show that Mr. Lynch, on this trip, acted under the supervision of Mrs. Lynch or that he was subject to her supervision in any way, and we have ruled that the facts do not support the theory of agency. Counts v. Thomas (Mo. App.), 63 S. W. (2d) 416, l. c. 419, considers the Keim v. Blackburn case and says that "it will be noted that in the Blackburn case the Supreme Court lays special importance upon the fact that Mary Blackburn had nothing to do with taking and using her father's car and that the record fails to show she was any more than a mere guest. The court clearly intimates that if she had taken the car out or had been jointly interested in the purpose of the trip, whatever that purpose was, the result might have been different." But what is there said is no support for the contention that in the present case Mr. Lynch was acting as the agent of Mrs. Lynch or that the trip was a joint enterprise. We think the request for a directed verdict for Mrs. Lynch should have been given.

The judgment as to defendant, Genevieve Lynch, should be affirmed, and as to defendant, James A. Lynch, the judgment should be reversed and the cause remanded. It is so ordered. *Ferguson* and *Hyde*, *CC.*, concur.

PER CURIAM:—The foregoing opinion by BRADLEY, C., is adopted as the opinion of the court. All the judges concur.