231 S.W.2d 230 (1950)
DOUTT
v.
WATSON et al.
No. 21355.
Kansas City Court of Appeals. Missouri.
June 5, 1950.
*231 Claude McFarland, Jr., Kansas City, W. Raleigh Gough, Kansas City, for appellant.
Arthur B. Taylor, Kansas City, Walter A. Raymond, Kansas City, for respondents.
SPERRY, Commissioner.
William Doutt, plaintiff, sought damages against Robert Watson and Edward Watson, defendants, for personal injuries and property damages suffered in an automobile collision. Verdict and judgment were for plaintiff against Robert Watson alone, in the sum of $5000, from which he appeals.
The collision occurred within the city limits of Independence, at about 12 a. m., June 16, 1947, at the intersection of Noland Road and Truman Road. Noland is a north-south highway, with a pavement 18 feet wide, and Truman is an east-west highway, the paved portion of which is 35 feet wide, with oiled shoulders on each side, 15 feet in width. Plaintiff entered the intersection on Noland, from the south, and defendant entered from the east. It was a clear night and the pavement was dry. Both vehicles were in good mechanical condition. There was a stop sign a few feet east of the intersection, on Truman Road, and a blinker which showed a red light on Truman, and a bronze light on Noland. It was in operation at the time of the collision.
Plaintiff, accompanied by a young lady riding in the sedan automobile seat by his side, and two young men and young women in the rear seat, was returning from Wildwood Lake, a pleasure resort a few miles from Independence. Defendant, operating a Chevrolet panel truck, accompanied by a young lady riding in the seat by his side and by several other young men and women riding in the body of the truck, was likewise returning from Wildwood.
Plaintiff's testimony was to the effect that, as he approached the intersection from the south, he was driving at a speed of not more than 20 miles per hour, probably less, because of the rough, wavy condition of the roadway; that at the southeast corner of the intersection the surface of the land is about 3 feet higher than the road level and, at that time, tall weeds were growing thereon, which tended to obstruct vision toward the east on Truman Road; that he was looking down Truman Road as he approached and, when the front of his car was entering the intersection, at the south boundary thereof, he first saw defendant's truck approaching at a speed of 50 or 60 miles per hour; that when he first saw it it was back about 40 feet; that he thought it was coming too fast to stop and that he put on his brake and attempted to turn his wheels to the left; that his car travelled about 10 feet, with the wheels sliding 3 or 4 feet, before it was struck; that it continued on for about 15 feet, remaining on its wheels; that defendant's truck turned over on its side and slid to a point some 50 feet east and north of the point of impact, coming to rest on its side in a filling station driveway; that the collision occurred in the east lane of Noland and at about the center of Truman Road; that defendant appeared to release the gas pedal as he approached, then stepped on it in an effort to clear the intersection ahead of plaintiff. He stated that defendant, immediately after the collision, said: "It was all my fault."
Three of the people who were riding in plaintiff's car at the time of the collision testified in his behalf. Their testimony tended to corroborate that of plaintiff rather fully, one of them stating that he heard defendant make the above quoted statement.
Defendant introduced into evidence, and read to the jury, an ordinance of the city of Independence which provided that the speed of motor vehicles within the city should not be in excess of 20 miles per hour.
Defendant's testimony was to the effect that, as he approached the intersection, at a point 50 feet east thereof, his speed was 20 miles per hour or less; that the truck was equipped with a governor, the effect of which was to hold the speed under 35 miles per hour; that he came to a "practical" stop before entering the intersection; that there was a stop sign and he stopped; that he did not come to a full, dead stop, but came to a stop so as to change into *232 second gear, which he did; that as he was changing gears he looked to the left and right and saw nothing coming, nor any headlights; that he then proceeded into the intersection at about 5 miles per hour; that the front end of his truck was just moving onto the east edge of the concrete of Noland when he first saw the headlights; that the car was then about 30 feet to the south, and defendant's left; that it was proceeding at a speed of 40 or 50 miles per hour, or faster; that he thought it best to attempt to pass in front of defendant, and stepped on the gas; that the truck was struck on the left front fender, turned on its side and slid to a stop about 25 feet from the point of impact; that defendant's car travelled about 15 feet after being struck. Several witnesses, on behalf of defendant, gave evidence tending to corroborate him in many respects, including the fact that the seal on the governor had not been tampered with after its installation, although some admitted that such could be done without being detected except upon close inspection.
Plaintiff pleaded negligence in failing to stop at the stop sign, in failing to yield the right of way, and in driving said truck "at a speed which was high, negligent and unlawful under all of the conditions then and there existing."
Plaintiff's main instruction No. 1 is, in part, as follows: " * * * and that there was a stop sign on Van Horn Road east of said intersection requiring westbound traffic on Van Horn Road to stop before entering said intersection, if you so find; and that plaintiff approached and entered said intersection at a time when defendant's truck was approximately thirty to fifty feet east of the east curbline of Noland Road, if you so find; and that the plaintiff was not negligent in the maner submitted in other instructions herein, if you so find; and that said defendant failed to stop said truck before driving it into said intersection, if you so find; and that in failing to stop at said stop sign before entering said intersection said defendant was negligent, if you so find; and that defendant failed to yield the right-of-way to plaintiff whose automobile was already in the intersection, if you so find; and that in failing to yield the right-of-way to plaintiff under the facts and circumstances shown in evidence said defendant was negligent, if you so find; and that said defendant drove and operated said automobile into said intersection at a speed in excess of twenty miles per hour, if you so find; and that in driving said automobile truck into said intersection at such speed under the circumstances shown in evidence said defendant was negligent, if you so find; and that as a direct and proximate result of the aforesaid negligence, said automobile truck driven by said defendant came into violent collision with the right front corner of plaintiff's automobile, if you so find."
Plaintiff submitted negligent speed, negligent failure to stop, and negligent failure to yield right of way, all in the conjunctive. Defendant contends that no one of said issues was properly submitted and that, therefore, the instruction is reversibly erroneous. Of course, if any of said issues were properly submitted, they having been submitted in the conjunctive, it was not reversible error to have given the instruction. Fair v. Thompson, Mo.App., 212 S.W.2d 923, 930; Corley v. Kroger Grocery & Baking Company, 355 Mo. 4, 193 S.W.2d 897, 900.
In connection with this point, defendant first contends that submission of negligent speed "in excess of 20 miles per hour" is erroneous, he having pleaded common law negligence in the matter of speed.
We have quoted the language used in pleading this issue. However, defendant introduced in evidence an ordinance of the city of Independence which prohibited a speed in excess of 20 miles per hour within said city limits. The instruction, is, apparently bottomed on said ordinance, although the ordinance was not pleaded.
Defendant contends that it was error to submit an issue not pleaded. He cites a number of cases wherein it was so held, including Hartley v. McKee, Mo.App., 86 S.W.2d 359; Genglebach v. Payne, Mo. App., 236 S.W. 1092. In the first mentioned case it was held (361) error to instruct on an ordinance not pleaded, where *233 the cause of action was based directly on said ordinance. In the second (91) it was held error to instruct on an issue not pleaded unless said issue was one that could have been incorporated in the petition, by amendment, without changing the cause of action asserted. However, since the adoption of the new civil code, amendments are unlimited in scope and, with leave, may be filed at any time before final judgment, White v. Sievers, Mo.Sup., 221 S.W.2d 118, 122; Stone v. Kies, Mo.App., 227 S.W.2d 85, 87; and it is not error to instruct on an issue not pleaded if said issue is supported by evidence to which no objection has been entered, Mo.R.S.A. § 847.82; Carr Civil Procedure, Section 215, page 560; Hancock v. Union Pacific Railroad Company, Mo.App., 231 S.W.2d 225.
True the ordinance in this case was introduced in evidence by defendant, not by plaintiff. "However, plaintiff is entitled to the benefit of any of defendant's evidence which tends to aid her." Patrick v. Crank, Mo.App., 110 S.W.2d 381, 384. We must hold, therefore, that no error was committed in this connection.
The instruction is further criticised because, it is alleged, it submits negligent speed, which is antagonistic to and wholly inconsistent with the two other submissions; that the two theories are irreconcilably inconsistent. He cites Dilallo v. Lynch, 340 Mo. 82, 101 S.W.2d 7, 10; State ex rel. Tunget v. Shain, 340 Mo. 434, 101 S.W.2d 1, 4.
Defendant argues that negligence is always the failure to exercise that degree of care required by the nature of the case, (in this case, the highest degree of care) to perform a duty owed to another. He contends that a duty to stop an automobile implies a means and ability to stop and that, if defendant approached the intersection at such a rate of speed as to be unable to stop then his negligence does not lie in negligently failing to stop, but, rather, in negligent speed; that defendant could not be guilty of both such charges of negligence.
It is not necessarily improper to plead, and to instruct, on more than one ground of negligence, so long as they are not mutually inconsistent. In a primary negligence case it is not error to instruct on excessive speed and failure to slacken speed, or to stop, or to yield right of way. Each of such duties are owed, independently of the others. Excessive speed may have resulted in the driver being unable to stop but, in a primary negligence case, such fact does not, of itself, exonerate him from failure to stop. Hillis v. Home Owners' Loan Corporation, 348 Mo. 601, 154 S.W.2d 761, 765.
It is argued that, since plaintiff stated in evidence that defendant was driving at a speed of 50 to 60 miles per hour, and that he thought he could not stop, he cannot predicate a right of recovery on defendant's failure to stop or yield right of way. In the first place, plaintiff was merely giving an estimate of the speed of the approaching automobile, at night, when the two vehicles were about (estimated) 40 feet apart, and when both were converging. However, it was defendant's duty to have stopped, or to have yielded the right of way, or so the jury could have found, regardless of the fact that he was travelling at an excessive rate of speed. It was his duty to do and perform each or all of these things. Hillis v. Home Owners' Loan Corporation, supra.
Defendant claims error because of the court's refusal to give his instruction No. "B." By said instruction the jury would have been informed, among other things, that defendant's failure to "come to a dead stop is immaterial to the issues to be decided by you." Such an instruction would have been an invasion of the jury's right to determine the fact of whether or not failure to "stop" was a proximate cause of the collision, as pleaded. Defendant admitted, in his deposition, which was read in evidence, that he did not "stop." He stated that he came to a "practical" stop, whatever that may mean, and shifted from high to second gear. What effect his failure to come to a stop had, if he was required to stop, as pleaded, was a fact for the determination of the jury, not a question of law. Since the instruction was erroneous, as presented, it was not error for *234 the court to have refused it. Gavin v. Forrest, 230 Mo.App. 662, 72 S.W.2d 177, 183.
The verdict and judgment were for plaintiff in the total amount of $5000. There was substantial evidence from which the jury could have found that plaintiff's automobile was damaged to the amount of $650, or more. Is a judgment of $4350 for personal injuries excessive?
In considering this question we must consider the evidence bearing thereon in its most favorable light in aid of the verdict and judgment, just as we do in determining whether a submissible case was made. Henderson v. Dolas, Mo.Sup., 217 S.W.2d 554, 557.
Plaintiff was 24 years of age when the accident occurred. He had, for a time, operated a truck of his own, and did hauling. At the time of the accident he was employed as a truck driver, operated a winch, and gave out material. Shortly after the accident he was discharged from his employment because he was unable to satisfactorily perform his duties because of the injury to his back, received in the accident. About 3 weeks later, his back not having recovered, he went to Dr. Hickerson, who treated him for some 2 or 3 weeks, and dischargd him; but he did not fully recover. Since then he had been unable to do heavy labor, and he entered college where he remained at the time of the trial. He suffers from bending over to tie his shoe laces, from sitting in a chair at school for long periods of time, and from walking. He was somewhat of an acrobat, prior to the accident, and instructs a class at college in that subject in order to gain a college credit; but he is wholly unable to demonstrate to the class. Dr. Hickerson testified to the effect that he examined plaintiff a few days prior to the trial; that plaintiff complains of pain on movement of his back; that there is a definite limitation of movement on forward bending; that objective symptoms bore out such contention; that, in his opinion, plaintiff could not perform heavy labor; and that, in order to heal this condition, the back should be immobilized for a period of time, that such treatment should be followed by graded exercises, and that such treatment should continue for an indefinite time, "months." He would not say that the injury was of a permanent character but he stated that, since the condition had persisted for about two years "the chances would be greater of having a permanent injury in the back."
Defendant offered virtually no evidence on this issue. He had caused plaintiff to be examined, prior to the trial, by a medical doctor; but such doctor was not called as a witness. Under such circumstances an inference that the doctor's testimony, had he been called, would have been unfavorable to defendant, is justified. We are unwilling, and unable, to hold as a matter of law that the judgment is excessive.
The judgment should be affirmed.
BOUR, C., concurs.
PER CURIAM.
The foregoing opinion of SPERRY, C., is adopted as the opinion of the court.
The judgment is affirmed.
DEW, P. J., and BROADDUS, J., concur.
CAVE, J., not participating.